Cindy RITZ, Appellant,

v.

**WAPELLO COUNTY BOARD OF SUPERVISORS, et al., Appellees.**

No. 97–2134.

Supreme Court of Iowa.

June 3, 1999.

Rod Powell of Powell Law Firm, P.C., Norwalk, for appellant.

Joni L. Keith and Lloyd E. Keith of the Keith Law Firm, P.C., Ottumwa, for appellees.

Thomas J. Miller, Attorney General, and Rick Autry, Assistant Attorney General, amicus curiae for the Civil Rights Commission.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and CADY, JJ.

CADY, Justice.

A terminated employee appeals the dismissal of her petition alleging violations of the Iowa Civil Rights Act and the federal Family and Medical Leave Act. We reverse the district court decision and remand for further proceedings.

### I. Background Facts and Proceedings.

Cindy Ritz was employed by the Wapello County Board of Health as a nurse administrator. She initiated this action in district court on April 4, 1997, against the Wapello County Board of Supervisors and

Board of Health, as well as the chair person of the Board of Health (collectively referred to as Wapello County) after her employment was terminated. In her petition, Ritz alleged her termination violated the Iowa Civil Rights Act and the federal Family and Medical Leave Act. The petition claimed the termination occurred February 12, 1996. It further alleged Ritz filed a complaint with the Iowa Civil Rights Commission on August 9, 1996, and the Commission issued an administrative release and "right-to-sue" letter on January 8, 1997.

Ritz did not serve Wapello County with an original notice and copy of the petition at the time of the filing. On August 21, 1997, the district court, sua sponte, issued an order giving Ritz until September 19, 1997, to file proof of service. Ritz filed proof of service on September 19, 1997, indicating Wapello County was served on September 17, 1997.

Wapello County responded to the petition by filing a motion to dismiss. It alleged the district court did not have jurisdiction over the case because the termination occurred February 5, 1996, and Ritz did not file a timely complaint with the Iowa Civil Rights Commission. Wapello County also claimed the petition should be dismissed because the delay between the filing of the petition and the service of the petition was abusive.

Ritz responded to the motion to dismiss by submitting numerous documents to the district court explaining the background and procedural history of the case. These documents indicated Ritz was told on February 5, 1996, that her position would be eliminated February 12, 1996. The documents also included an administrative closure letter issued by the Civil Rights Commission informing Ritz the Commission would take no further action on her complaint. The letter included a copy of the Commission "screening data analysis and case determination." This document indicated Wapello County provided the Commission with a legitimate, nondiscriminatory explanation for the termination, and further indicated the complaint was untimely because the date of the termination was February 5, 1996. It also noted Ritz failed to respond to the Commission's questionnaire, which permitted administrative closure under Iowa Administrative Code rule 161–3.12(1). Finally, the documents submitted by Ritz included a copy of an administrative release letter, authorizing Ritz to commence an action in district court.

The district court granted the motion to dismiss.[1] It found the Commission had no jurisdiction to issue the administrative release letter based upon the finding contained in the screening analysis that the complaint was untimely. The district court determined it was unnecessary to address the abusive delay claim because the failure to file a timely complaint with the Commission was dispositive of the case. Neither party filed a motion under Iowa Rule of Civil Procedure 179(b).

---

1. We have held that a "motion to dismiss can neither rely on facts not alleged in the petition (except those of which judicial notice may be taken) nor be aided by an evidentiary hearing." *Tate v. Derifield*, 510 N.W.2d 885, 887 (Iowa 1994) (in deciding whether to grant a motion to dismiss in a loss of consortium suit, the district court was limited to consideration of facts alleged in the petition, and thus it improperly took judicial notice of facts contained in husband's criminal court file); *Bruce v. Sarver*, 472 N.W.2d 631, 632 (Iowa App.1991) (district court could not take judicial notice of a letter establishing paternity on a motion to dismiss).

Ritz's resistance to the motion to dismiss referred to and included various exhibits that were not included or referred to in the petition. These documents included the administrative closure letter and the screening data analysis. Both parties and the district court referred to these documents. There is no mention, however, of judicial notice. We therefore consider any objection to the form of the record presented to the court on the motion to dismiss waived. *See Clinton Nat'l Bank v. Kirk Gross Co.*, 559 N.W.2d 282, 283 n. 1 (Iowa 1997).

On appeal Ritz claims the district court erred by dismissing her petition. Specifically, she contends the district court erred by: (1) finding the Iowa Civil Rights Commission failed to issue a proper right-to-sue letter; and (2) dismissing her Family and Medical Leave Act claim. The State submitted an amicus curiae brief, claiming the Iowa Civil Rights Commission properly issued the administrative release letter. The Board asserts even if the trial court erred, the case should have been dismissed based upon the abusive delay in service of process.

## II. Standard of Review.

■ Our review of rulings on motions to dismiss is limited. *Haupt v.. Miller*, 514 N.W.2d 905, 907 (Iowa 1994). We review a district court's ruling on a motion to dismiss for correction of errors at law. Iowa R.App.P. 4; *McCormick v. Meyer*, 582 N.W.2d 141, 144 (Iowa 1998).

■ A motion to dismiss is properly granted only if a plaintiff's petition "on its face shows no right of recovery under any state of facts." *Schaffer v. Frank Moyer Constr., Inc.*, 563 N.W.2d 605, 607 (Iowa 1997) (quoting *Tate v. Derifield*, 510 N.W.2d 885, 887 (Iowa 1994)). Allegations in the petition are viewed in a light most favorable to the plaintiff and facts not alleged cannot be relied on to aid a motion to dismiss nor may evidence be taken to support it. *Id.*

## III. Abusive Delay in Service of Process.

### A. Preservation of Error.

■ A rule 179(b) motion is necessary to preserve error when a trial court fails to resolve an issue, claim, defense, or other theory properly submitted to it for adjudication. Iowa R.Civ.P. 179(b); *Lawrence v.*

2. Iowa Rule of Civil Procedure 49 was amended effective January 24, 1998, to provide:

> If service of the original notice is not made upon the defendant, respondent, or

*Grinde*, 534 N.W.2d 414, 418 (Iowa 1995). The purpose of a rule 179(b) motion is "to advise counsel and the appellate court of the basis of the trial court's decision in order that counsel may direct his attack upon specific adverse findings or rulings in the event of an appeal." *City of Fort Dodge v. Civil Serv. Comm'n*, 562 N.W.2d 438, 440 (Iowa App.1997) (quoting *Berger v. Amana Soc'y*, 254 Iowa 1036, 1040, 120 N.W.2d 465, 467 (1963)).

■ Ritz contends the Board failed to preserve its abusive delay in service of process claim because it failed to file a rule 179(b) motion requesting the trial court to enlarge its ruling. We have recognized, however, a distinction between successful and unsuccessful parties for purposes of error preservation. *See Johnston Equip. Corp. of Iowa v. Industrial Indem.*, 489 N.W.2d 13, 16 (Iowa 1992) (successful party need not cross appeal to preserve error on ground urged but ignored or rejected in trial court). Rule 179(b) is directed at unsuccessful parties who intend to challenge the district court's ruling on issues it did not resolve. A successful party would have no motivation to raise a rule 179(b) motion to challenge the basis upon which the district court made its decision. Consequently, the requirements of rule 179(b) are only applied to unsuccessful parties challenging the district court decision.

■ The Board was the successful party in this case. Accordingly, it was not required to file a rule 179(b) motion on its abusive delay in service of process claim.

### B. Abusive Delay.

■ At the time this action was commenced, our rules of civil procedure did not provide a specific time period in which service of process must be made following the filing of a petition.[2] *See McCormick*,

> other party to be served within 90 days after filing the petition, the court, upon motion or its own initiative after notice to the party filing the petition, shall dismiss the action without prejudice as to that de-

582 N.W.2d at 145. Nevertheless, our cases have required dismissal of a lawsuit if an unjustified abusive delay in completing service occurs. *Id.; Alvarez v. Meadow Lane Mall Ltd. Partnership,* 560 N.W.2d 588, 591 (Iowa 1997). Under this standard, the court must first determine if the delay was presumptively abusive. *McCormick,* 582 N.W.2d at 145. If presumptively abusive, the court must then determine if the plaintiff has shown the delay was justified. *Id.* If it is justified, dismissal is inappropriate. *Alvarez,* 560 N.W.2d at 591.

■ The delay between the filing of the petition and service of process in this case was 166 days. Although the district court made no finding whether this delay was presumptively abusive, we have found similar delays in other cases to be presumptively abusive. *See Henry v. Shober,* 566 N.W.2d 190, 192 (Iowa 1997) (169–day delay presumptively abusive); *Alvarez,* 560 N.W.2d at 591 (159–day delay presumptively abusive); *see also Turnbull v. Horan,* 522 N.W.2d 860, 861 (Iowa App.1994) (126–day delay presumptively abusive).

■ Although we can resolve issues on appeal based upon grounds raised but not relied upon by the district court, those grounds must be supported by facts in the record unless the matter can be decided as a matter of law. *See Tate,* 510 N.W.2d at 887. Because of the procedural posture of this case, there is no record on appeal for us to determine whether or not the delay was justified. Therefore, we are unable to decide the appeal on grounds raised but not relied upon by the district court.

fendant, respondent, or other party to be served or direct an alternate time or manner of service. If the party filing the papers shows good cause for the failure of service, the court shall extend the time for service for an appropriate period.
Iowa R.Civ.P. 49(f).

**3.** Rule 3.9 provides:

## IV. Right–to–Sue Letter.

■ There are two conditions to filing a petition in district court for unfair or discriminatory practices. First, the petitioner must file a timely complaint with the Civil Rights Commission. Iowa Code § 216.16(1)(a) (1997). Second, the Commission must issue a release or right-to-sue letter no earlier than sixty days after the complaint has been on file. *Id.* § 216.16(1)(b).

The district court determined in this case that the Commission was not authorized to issue a release because it previously found Ritz failed to timely file her complaint. Accordingly, the district court concluded the statutory conditions to filing a petition in district court were not satisfied, and dismissed the petition. The district court erred for two reasons.

### A. Right–to–Sue Letter.

■ The Iowa Civil Rights Commission administers the Iowa Civil Rights Act (Act). Iowa Code ch. 216. Part of the Commission's duties include enforcing rules prohibiting employment discrimination. *Id.* § 216.6. Individuals asserting violations of the Act must file a complaint with the Commission before any other steps toward legal relief can be taken. *Id.* § 216.16(1). The case may proceed to district court only after the Commission issues a right-to-sue release. *Id.* § 216.16(2).

Once a complaint is filed with the Commission, a jurisdictional review pursuant to Iowa Administrative Code regulation 161–3.9 is conducted to determine whether the Commission has jurisdiction over the complaint.[3] Iowa Admin. Code r. 161–3.9

**Jurisdictional review.** Upon the receipt of a statement offered as a complaint, the executive director or designee shall review the complaint to determine whether the commission has jurisdiction of the complaint. A no jurisdiction determination shall constitute final agency action for purposes of judicial review.
Iowa Admin. Code r. 161–3.9 (1993).

(1993). This review is conducted prior to service of the complaint on the respondent and is an evaluation of the complainant's allegations to dispose of facially inappropriate or untimely claims. *Id.* r. 161–3.6. Consequently, fact specific or complicated questions involving the timeliness of a complaint are rarely resolved at this juncture in the proceedings. *Id.* r. 161–3.3(3). Yet, if the Commission determines it has no jurisdiction under this rule 3.9 review, a right-to-sue letter will not be issued. *Id.* r. 161–3.10(4)(e).

If a complaint survives the initial evaluation under rule 3.9, it is subjected to further scrutiny under a preliminary screening process. Iowa Code § 216.16(6); Iowa Admin. Code r. 161–3.12(1). The preliminary screening process is governed by Iowa Administrative Code regulation 161–3.12. The process "is a tool to remove from the commission's active complaints those cases which the collected preliminary information indicates do not warrant further processing." *Id.* r. 161–3.12(1)(h).

The first step in the preliminary screening process is to send questionnaires to the parties. *Id.* r. 161–3.12(1)(a). If a complainant does not return the questionnaire within the designated time, the complaint may be administratively closed. *Id.* r. 161–3.12(1)(c)(1). If a respondent does not respond to the questionnaire, the case will continue to be screened for further investigation. *Id.* r. 161–3.12(1)(c)(2). If both responses are received, a determination is made whether a reasonable possibility of a probable cause determination exists or the legal issues in the complaint need development, or whether an administrative closure should be issued. *Id.* r. 161–3.12(1)(f), (g).

There are limits to the function of the preliminary screening:

> Unlike a "no probable cause determination" an administrative closure is not a final determination of the merits of the case. An administrative closure resulting from preliminary screening is merely an estimation of the probable merits of the case based on the experience and expertise of the commission. An administrative closure does not have the same effect as a determination of "no probable cause."

*Id.* r. 161–3.12(3).

A complainant may request a right-to-sue letter "[a]fter the expiration of 60 days from the timely filing of a complaint with the commission...." Iowa Code § 216.16(2); Iowa Admin. Code r. 161–3.10(1).[4] There are two conditions precedent to the right to sue: (1) the complaint must be filed with the Commission pursuant to rule 3.5; and (2) the complaint has been on file with the Commission for at least sixty days. Iowa Admin. Code r. 161–3.10(2). There are several exceptions to the issuance of a right-to-sue letter, including a provision that the letter will not be sent should the Commission find it does not have jurisdiction pursuant to rule 3.9. *Id.* r. 161–3.10(4)(e). The only timeliness exception to the issuance of the right-to-sue letter involving rule 3.12 is that an administrative closure does not bar a right-to-sue letter until two years from the issuance of the closure have elapsed. *Id.* r. 161–3.10(4)(d).

The function of the right-to-sue letter is to certify to the district court that the conditions precedent stated in rule 3.10(2) have been met and none of the exceptions in rule 3.10 apply. It does not certify any factual aspects of the case beyond the limitations of rule 3.10. Thus, a critical inquiry in our analysis is whether the administrative closure and case screening was made pursuant to rule 3.9 or rule 3.12. A rule 3.9 administrative closure prohibits the issuance of a right-to-sue letter, while a rule 3.12 administrative closure does not.

The facts in this case indicate the administrative closure was done as a preliminary screening pursuant to rule 3.12. First, the

---

4. The legislature enacted the right-to-sue provision in order to relieve the backlog of cases before the Commission. *Smith v. ADM Feed Corp.*, 456 N.W.2d 378, 381 (Iowa 1990).

screening data analysis and case determination do not make reference to either rule. It states the case has been screened under Iowa Code section 216.16. Section 216.16 refers to the preliminary screening of cases and to administrative closure, but does not refer to jurisdictional review. The evaluation also specifically refers to the standards laid out in rule 3.12. Second, the determination was made based on a "review of information provided by the parties." This information was not available at the time of a rule 3.9 jurisdictional review. Further, the issuance of the right-to-sue letter is consistent with a rule 3.12 review. Such a letter would not have been issued if the case had been closed pursuant to rule 3.9. Accordingly, the administrative closure letter was sent following the preliminary screening done pursuant to rule 3.12.

Because the administrative closure letter was sent pursuant to rule 3.12, we must evaluate whether any exceptions to the issuance of the right-to-sue letter implicating rule 3.12 apply to this case. The only timeliness exception implicating rule 3.12 involves the lapse of two years following the administrative closure letter. This exception does not apply to this case.

In addition to applying rule 3.9 instead of rule 3.12, the district court erroneously relied upon factual conclusions in the administrative screening data analysis and case determination pursuant to rule 3.12. This analysis, in connection with the right-to-sue letter, merely certifies the conditions precedent in rule 3.10(2) have been satisfied and none of the right-to-sue exceptions apply. It does not certify factual aspects of the case or applications of the law to the facts of the case beyond the standards enumerated for the issuance of a right-to-sue letter. Consequently, the Commission properly issued a right-to-sue letter, and the district court erred by find-

ing the Commission did not have authority to issue the letter.

### B. Challenge to Issuance of Right-to-Sue Letter.

Generally, any challenge to the authority of the Commission to issue a release would need to be asserted before the Commission. The Commission is authorized by statute to issue a release or right-to-sue letter, and the performance of that duty constitutes agency action. *See* Iowa Code § 216.16(2); *Genetzky v. Iowa State Univ.*, 480 N.W.2d 858, 861 (Iowa 1992) (an action is an agency action if it falls within statutory mandate and area of expertise). As with any other agency action, judicial review is the proper form of relief. *See Black v. University of Iowa*, 362 N.W.2d 459, 462 (Iowa 1985) (judicial review proceedings are fundamentally different from original actions commenced in the district court); Iowa Code ch. 17A. Yet, an action for discrimination is an original action when filed in district court. Thus, any challenge to the Commission's decision to issue the right-to-sue letter should have been raised before the Commission. Accordingly, the county waived its challenge to the right-to-sue letter.

### C. Timeliness of the Complaint.

Although we conclude the right-to-sue letter was properly issued by the Commission, the district court is nevertheless permitted to consider whether the complaint was timely filed.[5] In order to be timely, a complaint with the Commission must be filed within 180 days of the occurrence of an alleged unfair or discriminatory practice or act. Iowa Code § 216.15(12); Iowa Admin. Code r. 161-3.3(1); *Iowa Civil Rights Comm'n v. Deere & Co.*, 482 N.W.2d 386, 388 (Iowa 1992).

It is an unfair or discriminatory practice to "discharge" employees because of their

5. Had the Commission made a final agency determination regarding timeliness, the proper mechanism to attack the finding would be on judicial review. In this case, however, the

Commission did not make a final jurisdictional finding based upon timeliness, thereby rendering timeliness an appropriate issue before the district court. Iowa Code § 216.16(1).

sex. Iowa Code § 216.6(1)(a). However, we have not previously considered when "discharge" occurs for the purpose of triggering the 180–day limitations period.

Our civil rights act is patterned after the federal civil rights act. *Annear v. State,* 419 N.W.2d 377, 379 (Iowa 1988) (42 U.S.C. § 2000e–5(e) contains a 180–day limitations period). Thus, we find federal interpretation of the federal act instructive. *Id.* However, our review of both federal and state cases reveals a split of authority on when the limitations period begins. Generally, courts find the period begins on the date the employee was notified of the discharge or the date the employee left the employment. *See, e.g., Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6, 9 (1981) (holding the limitations period under the civil rights statute began to run after several nontenured administrators received notice of the termination, rather than the date of the actual termination); *Delaware State College v. Ricks,* 449 U.S. 250, 254–55, 101 S.Ct. 498, 502, 66 L.Ed.2d 431, 437 (1980) (holding the 180–day limitations period ran from the date a university professor was notified he failed to gain tenure, rather than the date his "terminal contract" expired);[6] *Gorman v. Hughes Danbury Optical Sys.,* 908 F.Supp. 107, 110–11 (D.Conn.1995) (limitations period under ADEA was triggered by letter notifying employee of termination); *Hale v. New York State Dep't of Mental Health,* 621 F.Supp. 941, 942 (S.D.N.Y.1985) (limitations period ran from date employee received letter from employer notifying him of termination rather than date of actual termination); *Romano v. Rockwell Int'l, Inc.,* 14 Cal.4th 479, 59 Cal.Rptr.2d 20, 926 P.2d 1114, 1123 (1996) (holding limitations period under state Fair Employment and Housing Act began to run upon actual termination rather than when employee was informed of discharge); *Ross v. Stouffer Hotel Co.,* 76 Hawai'i 454, 879 P.2d 1037, 1044 (1994) (90–day period to file employment discrimination complaint begins to run upon actual discharge rather than notice of discharge); *Keelan v. Bell Communications,* 289 N.J.Super. 531, 674 A.2d 603, 607–08 (1996) (the limitations period runs from the date of discharge rather than notification of discharge).

In this case, the facts underlying the timeliness issue have not been fully developed. The district court did not decide when discharge occurred and the parties did not raise the issue on appeal. We therefore decline to address the issue of when "discharge" occurs for the purpose of triggering the 180–day limitations period.

## V. Family and Medical Leave Act Claim.

 Ritz also contends the district court erred by dismissing the federal Family and Medical Leave Act claim. She correctly points out there is no statute requiring her to bring this claim to the Iowa Civil Rights Commission before filing a petition in district court alleging a violation of the Family and Medical Leave Act. The statutory prerequisites for the filing of a claim do not apply to a different claim merely because it is included in the same petition. Accordingly, the district court erred by dismissing this claim.

## VI. Conclusion.

We reverse the district court decision and remand the case for further proceedings, which may include a determination of the claim of abusive delay in service of

---

**6.** Prior to the decision in *Ricks,* several courts addressed issues related to the limitations period. *See, e.g., Chappell v. Emco Mach. Works Co.,* 601 F.2d 1295, 1304 (5th Cir.1979); *Krzyzewski v. Metropolitan Government of Nashville & Davidson Co.,* 584 F.2d 802, 805 (6th Cir.1978); *Bonham v. Dresser Indust., Inc.,* 569 F.2d 187, 192 (3d Cir.1977); *Egelston v. State University College,* 535 F.2d 752 (2d Cir.1976); *Moses v. Falstaff Brewing Corp.,* 525 F.2d 92, 94 (8th Cir.1975).

process in addition to the timeliness of the discrimination claim.

**REVERSED AND REMANDED.**