**William F. LOGAN and, Ellis M. Logan, Plaintiffs,**

v.

**AMERISTAR CASINO COUNCIL BLUFFS, INC., Defendant.**

No. CIV.01–CV–80024.

United States District Court,
S.D. Iowa,
Western Division.

Feb. 4, 2002.

Raymond R. Aranza, Brown & Brown, PC, Omaha, NE, for Plaintiffs.

Thomas J. Culhane, Patrick R. Guinan, Erickson & Sederstrom, Omaha, NE, Scott H. Peters, Peters Law Firm, Council Bluffs, IA, for Defendant.

## ORDER

WOLLE, District Judge.

On Thursday, November 1, 2001, the court heard arguments pertaining to defendant's resisted FED. R. CIV. PROC. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. For the foregoing reasons, the court grants defendant's motion with respect to each of the plaintiffs' causes of action.

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are residents of different states and the amount in controversy exceeds the jurisdictional minimum.

### BACKGROUND

Plaintiff William F. Logan (Logan) alleges that he began gambling at defendant Ameristar's casino in 1995. Logan claims

that, by 1998, he was drinking and gambling excessively at defendant's casino. Logan contends that Ameristar knew that Logan was a compulsive gambler and an alcoholic. To illustrate, Logan asserts that a friend, Michele Culver, explained to the casino pit boss Logan's alcoholism and gambling addiction and pleaded with him to bar Logan from the premises. Nevertheless, Logan asserts, Ameristar permitted—even encouraged—Logan to gamble his money away while its staff continued to serve Logan alcoholic beverages.

In his Second Amended Complaint, Logan charges two counts that he claims arise out of Iowa Admin. Code § 491–5.4 (99D,99F) (2001). First, Logan claims that Ameristar tortiously breached the administrative regulation. Second, Logan asserts that Iowa Admin. Code § 491–5.4(99D,99F)(12) establishes a duty of care that Ameristar breached in not preventing Logan from gambling. This breach of duty, contends Logan, resulted in his mountainous gambling debt owed to Ameristar. Logan also brings causes of action for tortious breach of implied covenant of good faith and fair dealing, fraudulent and negligent misrepresentation, and respondeat superior. Logan does not assert a claim under the Iowa Dramshop Act, Iowa Code § 123.92 (2001). In addition, Logan's wife, Ellis M. Logan, brings an action for damages for her alleged loss of consortium resulting from Ameristar's allegedly tortious conduct.

## ANALYSIS

### 1. Standard of Review

■ Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In considering such motions, pleadings are construed in a light most favorable to the plaintiff and the facts alleged in the complaint are taken as true. *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir.1994); *Ritz v. Wapello County Bd. of Supervisors*, 595 N.W.2d 786, 789 (Iowa 1999) (citing *Schaffer v. Frank Moyer Constr., Inc.*, 563 N.W.2d 605, 607 (Iowa 1997)).

■ Dismissal is appropriate only if it is clear from the face of the complaint that plaintiff has no right to relief. *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir.1995); *Ritz*, 595 N.W.2d at 789. As a practical matter, dismissal occurs "only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671.

### 2. Iowa Admin. Code § 491–5.4(99D,99F)(12) does not establish a private right of action

Section 491–5.4(99D,99F)(12) does not expressly authorize a private cause of action in the event of noncompliance. *See* Iowa Admin. Code § 491–5.4(99D,99F)(12). In his Second Amended Complaint, Logan pleads in Counts One and Two, "Tortious Breach of Statute" and negligence, respectively. Essentially, Logan asks the court in these two Counts to predict whether the Iowa Supreme Court would imply a private cause of action in tort in the cited licensing regulations of the Iowa Racing and Gaming Commission (Commission). *See id.* The regulations upon which plaintiff relies state in pertinent part:

5.4(12). *Gambling Treatment Program*

(a) The holder of a license to operate gambling games shall adopt and implement policies and procedures designed to

(1) Identify problem gamblers; and

(2) Prevent previously identified problem gamblers from gambling at the licensee's facility or other facilities licensed by the state of Iowa.

(b) The policies and procedures shall be developed in cooperation with the gambling treatment program and shall include without limitation the following:

1. Training of key employees to identify and report suspected problem gamblers;

2. Procedures for recording and tracking identified problem gamblers;

3. Policies designed to prevent serving alcohol to intoxicated casino patrons;

4. Steps for removing problem gamblers from the casino; and

5. Procedures for preventing re-entry of problem gamblers.

(c) The licensee shall include information on the availability of the gambling treatment program in a substantial number of its advertisements and printed materials.

*Id.*

■■■ The Iowa Supreme Court, in determining whether a statute implies a private right to a cause of action, has adopted a modified version of the four-factor test set forth in *Cort v. Ash,* 422 U.S. 66, 75, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *Seeman v. Liberty Mutual Ins. Co.,* 322 N.W.2d 35, 38 (Iowa 1982) (adapting the fourth prong to the state judiciary). The second prong of this test prescribes that a "violation of a statutory duty gives rise to a tort claim only when the statute, explicitly or implicitly, provides for such a cause of action." *Sanford v. Manternach,* 601 N.W.2d 360, 371 (Iowa 1999); *see also Kolbe v. State,* 625 N.W.2d 721, 726 (Iowa 2001) (applying *Cort–Seeman* test to plaintiff alleging negligence). If the plaintiff cannot satisfy the legislative intent inquiry by the requisite burden of proof, the court cannot imply a private right of action. *Sanford v. Man-*

*ternach,* 601 N.W.2d 360, 371–72 (Iowa 1999) (concluding that "the lack of any indication that the legislature intended to create such a cause of action is fatal to the plaintiff's case....."). Here, plaintiff provides no evidence in support of any legislative intent to imply a right to a private cause of action.

Plaintiff cites two wrongful discharge cases that establish a cause of action in instances when the discharge of an employee frustrates established public policy. *See Springer v. Weeks and Leo Co., Inc.,* 429 N.W.2d 558, 560 (Iowa 1988); *Wilcox v. Hy–Vee Food Stores, Inc.,* 458 N.W.2d 870, 872 (Iowa Ct.App.1990). Of the two, only *Wilcox* implies a cause of action for the violation of a statute or administrative regulation. *See Springer,* 429 N.W.2d at 560 (holding that an employer's discharge of an employee who had pursued her statutory right to workers' compensation claim against her employer violated public policy and was actionable tortious conduct). It is evident that the *Wilcox* court confined its holding to the sphere of employment relationships, as the matter related specifically to tortious interference with a contract for hire. *Wilcox,* 458 N.W.2d at 872 (relying on *Springer*). Indeed, plaintiff cites no additional case law suggesting that Iowa courts imply causes of action whenever a statutory or regulatory transgression violates public policy.

The court concludes that IOWA ADMIN. CODE § 491–5.4(99D,99F)(12) is merely a regulatory measure that provides the requirements and conditions for licensure to operate a gaming facility. *See* IOWA ADMIN. CODE § 491–5.1(99D,99F) (2001). Both IOWA ADMIN. CODE § 491–5.4(99D,99F)(12) and the pertinent code sections, IOWA CODE §§ 99D, 99F (2001), are "devoid of any suggestion of a private remedy." *Unertl v. Bezanson,* 414 N.W.2d 321, 326 (Iowa 1987). Had the Iowa legislature intended to create a private cause of action, it would

have written the statutes unequivocally to create the tort or authorize such a regulation. Moreover, the legislature drafted quite detailed code provisions and allowed thorough administrative regulations governing gaming, with no suggestion of a private remedy; this virtually extinguishes any possibility that it intended to *imply* a private tort action. *See, e.g., Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291, 293 (3d Cir.1995) ("The intense state regulation of casinos is also important....").

For these reasons, the court may not imply a private right to a cause of action in tort in the administrative regulation, IOWA ADMIN. CODE § 491–5.4(99D,99F)(12), under which plaintiff seeks relief.

### 3. *Logan's common law negligence claim*

■ Although Logan merely mentions a common law negligence claim at various points in his pleadings and the memoranda resisting Ameristar's motion to dismiss, the court will nonetheless address this theory. To successfully prove a claim of negligence, a plaintiff must show that the defendant breached a duty of care that defendant owed to the plaintiff, and that plaintiff incurred damages that were proximately caused by the defendant's breach. *Kolbe*, 625 N.W.2d at 725.

Here, the dispositive issue is whether Ameristar owed Logan a common law duty to prevent him from drinking and gambling at its casino. The Iowa Supreme Court has never recognized a common law duty in a similar situation. This court refuses to stretch Iowa common law negligence in the manner requested without the slightest indication from Iowa courts suggesting that it would allow such a claim.

### 4. *Logan's breach of implied covenant of good faith and fair dealing claim*

Logan argues that his obvious intoxication during some of the time in which he was gambling renders void the "gambling contract". Logan contends that a contract was formed each time he gambled, and that Ameristar therefore owed him a duty of good faith and fair dealing. *See Hakimoglu*, 70 F.3d at 294 n. 1 (Becker, J., dissenting). The "gambling contract" theory fails for lack of one of the fundamental requirements of contract formation—mutual assent. *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 268 (Iowa 2001) (" 'All contracts must contain mutual assent,' " quoting *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 285 (Iowa 1995)). In footnotes, two courts addressed and dismissed the possibility of a similar claim under New Jersey law. *See Tose v. Greate Bay Hotel and Casino, Inc.*, 819 F.Supp. 1312 (1993); *Hakimoglu v. Trump Taj Mahal Assocs.*, 876 F.Supp. 625 (1994), *aff'd* 70 F.3d 291 (3d Cir.1995). These courts postulated that a contract never forms between a casino and a gambler due to the lack of mutuality. The *Tose* court noted that "every aspect of the relationship between the gambler and the casino is minutely regulated by the state and there is little freedom of contract in the usual sense." 819 F.Supp. at 1316. The *Hakimoglu* district court remarked that "[t]he patron does not negotiate the terms of his relationship with the casino, nor can the patron or casino vary the rules of the game, the odds, or the payoffs." 876 F.Supp. at 633.

The Iowa Racing and Gaming Commission has employed similarly restrictive regulatory measures. The Commission authorizes a select few table games and determines their payouts. IOWA CODE § 99F.4(15) (2000); IOWA ADMIN. CODE § 491–11.5(99F) (2002). The Commission must inspect, investigate, and approve individual slot machine prototypes and regulate their payouts. IOWA ADMIN. CODE

§§ 491–11.3(99F), 491–11.4(99F) (2002). Further, the Commission has established precise ranges within which the theoretical payout percentage of slot machines must lie. IOWA CODE § 99F.4(16) (2000); IOWA ADMIN. CODE §§ 491–11.9(99F) (2002).

 In short, the highly regulated nature of the gambling industry drastically reduces the parties' freedom to contract and thereby precludes the mutuality necessary to form a "gambling contract". Logan's implied covenant of good faith and fair dealing claim fails as the requirements for contract formation remain unsatisfied.

### 5. Logan's misrepresentation claims and Ellis Logan's loss of consortium claim

 Logan's final claim is that Ameristar failed to disclose its policy of encouraging clients to gamble through invitations, coupons, and other benefits as well as directing wait staff to serve clients alcohol to incite them to gamble more. In his pleadings, Logan asserts that Ameristar *failed* to inform him of certain of its policies. Logan has not pleaded that Ameristar made any material representation to Logan that was false, a necessary element of any misrepresentation claim. *Whalen v. Connelly*, 545 N.W.2d 284, 294 (Iowa 1996). Therefore, the court dismisses both of Logan's misrepresentation claims.

Since the court has found no liability in tort on behalf of Ameristar, the court also dismisses Ellis Logan's loss of consortium claim.

#### CONCLUSION

The court grants defendant Ameristar's motion to dismiss each of the plaintiff's causes of action.

IT IS SO ORDERED.