Alicia **ALVAREZ** and Gabriel Alvarez, Individually and as the Next Friend of Gabriel Alvarez, Jr., Alma Alvarez, Adriana Alvarez, and Diana Alvarez, Their Minor Children, Appellants,

v.

**MEADOW LANE MALL LIMITED PARTNERSHIP,** Spatz Partners, and William Spatz and David Spatz, Individually and as Partners, Appellees.

No. 95–2210.

Supreme Court of Iowa.

March 26, 1997.

Raymond L. Reel of Fairall, Fairall, Kaplan, Hoglan, Condon & Klaessy, Marshalltown, for Appellants.

Glenn Goodwin of Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, for Appellees.

Considered by HARRIS, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

This appeal challenges a trial court order dismissing a tort suit. It was dismissed as to one defendant because of the failure to provide a timely service of original notice. It was dismissed as to other defendants because it was not brought within the statute of limitations. We affirm.

Plaintiff Alicia Alvarez[1] claims to have been injured April 10, 1993, when she fell in a retail parking lot in Marshalltown, Iowa. The property was owned by Spatz Partnership and Meadow Lane Mall Limited Partnership, both of which were owned by individual defendants William and David Spatz.

In May 1993 Alvarez informed Spatz Partnership of the incident and was referred to its insurer, Aetna Insurance Company. In December 1993 Aetna paid Alvarez and her family approximately $5000 under Spatz Partnership's medical payment coverage, but denied any claim for liability damages.

Brian L. Sylvester was Alvarez's original attorney. In February 1995 he wrote Aetna, enclosing a copy of the lawsuit he intended to file, and inquired whether Aetna would accept service of original notice.[2] On April 6 Sylvester filed a petition against Spatz Partnership, but did not arrange for service of original notice as required by Iowa rule of civil procedure 49(a).[3] Sylvester later claimed the insurer's claims representative, Kathy Flynn, indicated during a telephone conversation on April 19 that she thought the

---

1. Other family members joined as plaintiffs. In our discussions we refer to them as a single plaintiff.

2. The letter contained the following relevant paragraphs.

    I am enclosing a courtesy copy of the suit we have prepared on behalf of Alicia Alvarez, her husband and children which we intend to file if Aetna is not willing to discuss this matter.

    . . . .

    I look forward to your response in the next two weeks. While I am aware from my prior work for insurance companies that you will in all likelihood not accept service on behalf of your client, I would appreciate knowing that position in writing so that we might properly proceed with this claim. I look forward to your response in this case.

3. Iowa rule of civil procedure 49(a) provides:

    Written directions for the service of the original notice and copy of petition shall be delivered to the clerk with the petition. There shall also be delivered to the clerk with the petition the original notice to be served and sufficient copies of both. The original notice shall contain the name of the court and the names of the parties, be directed to the defendant, state the name and address of the plaintiff's attorney, if any, otherwise the plaintiff's address, and the time within which these rules require the defendant to serve, and within a reasonable time thereafter file, a motion or answer, and shall notify the defendant that in case of the defendant's failure to do so, judgment by default will be rendered against the defendant for the relief demanded in the petition. Except in small claims and cases involving only liquidated damages, the original notice shall not state the amount of any money damages claimed.

company would accept service on behalf of the defendants. Flynn denied making such a representation.

The district court found that the following occurred during the April 19 phone conversation:

> A preponderance of the evidence shows that Mr. Sylvester asked whether Ms. Flynn and Aetna would accept service of the original notice on behalf of their insureds. Ms. Flynn, at the most, replied that she would have to check with her superiors. She did not state that Aetna would definitely accept service.

Later the same day, following the phone conversation, Sylvester wrote to Flynn at Aetna stating:

> Thank you for the opportunity to speak with you this morning. This letter is to confirm several aspects of our conversation regarding the above matter.
>
> First, enclosed is an Original Notice, Petition at Law, and Acceptance of Service form for your signature. As I understand it you either already have, by virtue of your company's prior directive, or will have, by virtue of contact with your insured, authorization to execute the Acceptance of Service to avoid the need for personal service on your insured which would be inconvenient for everyone involved. If this is incorrect, you need to notify me immediately so that I can take other steps to secure service on Spatz Partners.

Neither Flynn nor anyone else at Aetna ever responded to this letter.

Sylvester testified he wrote to Flynn again on July 11 asking her to respond to his request for a settlement offer. This letter stated:

> If you are not [willing to settle this case], I must insist that according to the terms of our prior agreement that you file an answer so we can proceed with this lawsuit.

---

**4.** Sylvester's license was later revoked. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sylvester,* 548 N.W.2d 144, 147 (Iowa 1996).

**5.** Further, Iowa rule of civil procedure 55 provides:

Flynn testified she did not receive the July 11 letter from Sylvester and indeed had never heard from him again.

In early August, when Sylvester's license to practice law in Iowa was suspended,[4] Alvarez retained her present counsel. On August 29 Alvarez sought and was granted permission to amend her petition to add Meadow Lane Mall Limited Partnership, William Spatz, and David Spatz as defendants. On September 5 the amended petition was filed. On August 31 Meadow Lane Mall Limited Partnership had accepted service of the original notice and amended petition. On September 11 William Spatz was served with the original notice both individually, and on behalf of the partnership. There is no record indicating that David Spatz has ever been served with an original notice.

The court sustained a defense motion to dismiss the suit against Spatz Partnership because of Sylvester's failure to serve a timely original notice, grounded on the failure to file directions for service pursuant to Iowa rule of civil procedure 49(a). The court found the long delay was presumptively abusive to Spatz Partnership. The court also dismissed the claims against William and David Spatz and Meadow Lane Mall Limited Partnership, finding the amendment adding them as defendants did not, under Iowa rule of civil procedure 89, relate back to the date the original petition was filed. Hence those claims were barred by the statute of limitations.

■ The matter is before us on Alvarez's appeal from the dismissals. The challenged dismissals rested on legal grounds and hence are reviewable on error. Iowa R.App. P. 4. The district court's factual findings are binding on appeal if supported by substantial evidence. *Dennis v. Christianson,* 482 N.W.2d 448, 450 (Iowa 1992).

■ I. Under Iowa rule of civil procedure 48 a civil action is commenced by filing a petition with the court.[5] The petition, orig-

---

For the purpose of determining whether an action has been commenced within the time allowed by statutes for limitation of actions, whether the limitation inheres in the statute's creating the remedy or not, the filing of a

inal notice, and directions for service must then be promptly delivered by the clerk to the sheriff, or to another "appropriate person" for service on the defendant. Iowa R. Civ. P. 49(b). Service can also be made by anyone who is neither a party nor the attorney for a party to the action. *See* Iowa R. Civ. P. 52. Although the Iowa rules of civil procedure do not specify when service must be made, our cases require dismissal of an action if there is an "abusive delay" in completing service. *See Dennis,* 482 N.W.2d at 450–51.

Our cases on delay in completing service provide that at some point a presumption of abuse arises. At that point the defendant's burden to show prejudice (in order to justify dismissal) shifts. It then becomes the plaintiff's burden (in order to avoid dismissal) to establish justification for delay. If plaintiff fails in this burden, the action must be dismissed. This was our holding in *Scieszinski v. City of Wilton,* 270 N.W.2d 450, 453 (Iowa 1978) (three-month delay). We took the same view in *Bean v. Midwest Battery & Metal, Inc.,* 449 N.W.2d 353, 355–56 (Iowa 1989) (eight-month delay), and again in *Dennis,* 482 N.W.2d at 451 (two-year delay). *Accord Turnbull v. Horan,* 522 N.W.2d 860, 861 (Iowa App.1994) (four-month delay). A thirty-seven day delay was deemed too short a period to invoke the presumption under the facts in *In re Estate of Steinberg,* 443 N.W.2d 711, 714 (Iowa 1989).

The foregoing cases call for the following determinations when there has been a delay in service after filing of the petition. The court must first determine if the delay was presumptively abusive. If the delay was presumptively abusive the court must then determine if the plaintiff has carried the burden of proving the delay was justified. If it was not justified, the case must be dismissed. If the delay was justified, dismissal by reason of abusive delay is inappropriate. Even if the delay was not presumptively abusive, an intentional delay can still require dismissal. *See Scieszinski,* 270 N.W.2d at 452–53.

▆ We think the 159–day delay in the present case was presumptively abusive. In *Turnbull,* 522 N.W.2d at 861, the court of appeals relied in part on the rationale underlying federal rule of civil procedure 4(j) (now renumbered federal rule of civil procedure 4(m)) under which service is prompt if it is made within 120 days of filing the complaint. Iowa procedural rules provide no such bright line. We nevertheless agree with the court of appeals that any delay beyond 120 days indicates the plaintiff filed the petition, not to seriously institute litigation, but rather to "ice" the statute of limitations for a later determination on whether to proceed with suit. We recognize that it is sometimes both appropriate and prudent to maintain options on whether to sue or not sue. But when it comes to courthouse filings, it is necessary to draw a line between bringing a suit and merely filing a petition in order to delay deciding whether to do so. It is not appropriate to expect judicial process to wait 159 days while a plaintiff decides.

▆ The next question is whether Alvarez showed the delay was justified. She argues justification in the claimed actions of Kathy Flynn, the Aetna agent. Alvarez points to the fact that Flynn never responded to Sylvester's April 19 letter requesting that she indicate whether he was mistaken in believing she would file an acceptance of service. This lack of response, it is argued, vindicated Sylvester's assumption that there would be no necessity to serve an original notice.

Alvarez's justification fails on several grounds. In the first place we think the trial court was on solid ground in rejecting Sylvester's factual claims concerning his conversation with Flynn. In the second place, there was nothing in the record, even assuming Sylvester's factual assertions (Flynn "thought" the company would accept service), that would justify the failure to provide for an original notice for 159 days after Aetna did not respond. Most of all, the justification fails because Alvarez simply cannot, by such a tactic, shift to defendant's insurer her own responsibility to provide for service as required by Iowa rule of civil procedure 49(a).

We conclude that the suit against Spatz Partnership was correctly dismissed.

petition shall be deemed a commencement of    the action.

II. Iowa Code section 614.1(2) (1995) provides a two-year statute of limitations for personal injury actions. Because Alvarez claims to have been injured April 10, 1993, two years expired April 10, 1995, well before the petition was amended on August 29, 1995. Her action against the defendants who were added by the amendment was hence barred under section 614.1(2) unless it related back to an earlier date under Iowa rule of civil procedure 89.[6] In her second assignment of error Alvarez claims that it did.

It is undisputed that the preliminary element under rule 89 was satisfied because the amendment "arose out of the conduct, transaction or occurrence set forth ... in the original pleading [Alvarez's petition against Spatz Partnership]." What is disputed by the parties is whether the amendment met the other two listed requirements of rule 89:(1) notice of the institution of an action within the statute of limitations period such that the added defendants are not prejudiced in maintaining their defense on the merits; and (2) that the added defendants knew or should have known within the statute of limitations period that, but for a mistake concerning the identity of the proper party, the action would have been brought against the added defendants.

■ A plaintiff bears the burden of satisfying the relation-back requirement of rule 89. *Porter v. Good Eavespouting*, 505 N.W.2d 178, 181–82 (Iowa 1993). This burden arises when, as here, the amendment would add new parties. *Id.* Rule 89 provides an amendment can relate back only if an added defendant receives notice of the institution of the action "within the period provided by law for commencing the action against [the added defendants]." This period begins "on the day the cause of action accrues" and ends when the appropriate statute of limitations expires. *Grant v. Cedar*

*Falls Oil Co.*, 480 N.W.2d 863, 865–66 (Iowa 1992). The period is not extended by the time (under rule of civil procedure 49) it would have reasonably taken to serve the original defendant. *Id.* Notice of intention to bring suit is in no way tantamount to notice of its filing. *Jacobson v. Union Story Trust & Sav. Bank*, 338 N.W.2d 161, 164 (Iowa 1983). Notice to an insurer is not notice to its insured. *Id.*

■ Under these holdings we think the trial court was correct in finding Alvarez failed to sustain her burden to show the added parties received notice to qualify for "relate back" relief under rule of civil procedure 89 because the added defendants did not, within the two-year period, receive notice of the initiation of Alvarez's action.

We conclude the trial court was correct in dismissing the action against all defendants.

**AFFIRMED.**

---

**6.** Iowa rule of civil procedure 89 provides in relevant part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satis-

fied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.