**William E. CARROLL, Jr., Appellant,**

v.

**Rizaldo MARTIR, E & E Investment Co. and C.R. England & Sons, Inc., Appellees.**

**No. 98–1907.**

Supreme Court of Iowa.

April 26, 2000.

Rehearing Denied May 31, 2000.*

* NEUMAN, J., taking no part.

Jerry R. Foxhoven, Des Moines, for appellant.

James A. Pugh of Morain, Burlingame & Pugh, P.L.C., West Des Moines, for appellees.

LAVORATO, Justice.

In this personal injury action, the plaintiff appealed from a district court ruling dismissing his petition for failing to serve the defendants in a timely manner. We transferred the case to the court of appeals, which reversed and remanded. We vacate the court of appeals decision and affirm the district court judgment.

## I. Background Facts and Proceedings.

On January 18, 1996, William E. Carroll, Jr. of Crystal Springs, Missouri, was in a motor vehicle accident in Polk County, Iowa. An officer of the Iowa State Patrol investigated the accident. In his report, the officer noted that Carroll's tractor-trailer was rear-ended by another tractor-trailer driven by Rizaldo A. Martir of "1412 Stancrest Ln., National City, CA 91950." The report listed "E & E Investment Co., CR England & Sons, Inc." of "4701 W. 2100 South W. Valley City, Utah, 84120" as the owners of the truck Martir was driving.

On February 9 Gary Toomb, claims administrator for C.R. England & Sons, Inc., faxed Carroll, asking him to "Please sign authorization and fax back to me ASAP." The fax listed the address of "C.R. England & Sons, Inc." as "4701 West 2100 South Salt Lake City, Utah 84120."

On February 12 Don H. Evans, an attorney in Jackson, Mississippi, faxed Toomb a letter that he was representing Carroll. On the same day, Evans sent the letter of representation through the mails. The letter put Toomb and C.R. England & Sons, Inc. on notice that Carroll had retained Evans to represent Carroll for injuries and damages Carroll had sustained in the January 18, 1996 accident.

On February 15 Toomb and Evans talked by phone. Toomb told Evans that he had made Carroll a $7500 offer to settle and that the offer was still open. The following day Toomb wrote Evans a letter confirming the phone conversation and asking if the offer was agreeable.

These settlement negotiations between Toomb and Evans continued until June 13, at which time Evans, in a letter, made a demand of $125,000 to settle the case. In a letter dated June 21, Nelson L. Hayes, general counsel for C.R. England & Sons, Inc., notified Evans that he had taken over the matter and wished to continue settlement negotiations and suggested mediation.

On December 11, 1997, attorney Jerry Foxhoven filed a lawsuit on behalf of Carroll against Martir, E & E Investment Co., and C.R. England & Sons, Inc. Foxhoven filed the lawsuit in Polk County, Iowa. The lawsuit sought personal injury and property damages from the defendants arising

out of the January 18, 1996 accident. The petition was filed approximately one month before the expiration of the two-year statute of limitations. *See* Iowa Code § 614.1(2) (1997).

Meanwhile, settlement negotiations apparently continued at least until May 26, 1998, when J. Ashley Ogden, an attorney in Evans' law firm, wrote a letter to Hayes in which he stated:

> Enclosed please find a courtesy copy of the Complaint filed by local counsel, Jerry Foxhoven. Please forward your offer in writing so that we may negotiate settlement without further litigation expense.
>
> Further, any answer to the Complaint should be sent to Jerry Foxhoven....

On June 5 Carroll, through Foxhoven, filed a "Motion for leave to extend time for service of process." The motion alleged that Foxhoven had (1) been retained shortly before the statute of limitations had run, (2) identified the defendants through the accident report, (3) not located a proper person or agent for the service of process on the corporate defendants despite expenditure of great time and energy, and (4) hired a private investigator to locate an agent for service and the investigator had apparently discovered the identity of the agent. The motion asked that the court enter an order (1) finding that good cause exists to extend the time for service of process and (2) extending the time for service until June 26, 1998.

The same day, the district court entered an ex parte order sustaining the motion. The court (1) found that Carroll had established good cause for an extension and (2) authorized an extension until June 26, 1998.

On June 24 Foxhoven served all three defendants pursuant to Iowa Code section 321.501. Section 321.501 permits a nonresident involved in a motor vehicle accident in Iowa to be served

[b]y filing a copy of said original notice of suit with [the director of transportation] . . . and

...[b]y mailing to the defendant, and to each of the defendants if more than one, within ten days after said filing with the director, by restricted certified mail addressed to the defendant at the defendant's last known residence or place of abode, a notification of the said filing with the director.

On June 24, pursuant to section 321.501, Foxhoven mailed a copy of the notification to Rizaldo Martir at his California address as listed on the accident report. Martir acknowledged receipt. Foxhoven also mailed a copy of the notification to Keith Walus, Jr., as registered agent for E & E Investment Co. and C.R. England & Sons, Inc. at 4701 W. 2100 South, Salt Lake City, Utah. Walus acknowledged receipt of the notification for both companies.

On July 16 all three defendants filed a motion to dismiss. They alleged a 195-day delay between the filing of the petition on December 11, 1997, and service of the original notice on June 24, 1998. They further alleged the delay was presumptively abusive in violation of Iowa Rule of Civil Procedure 49 and warranted dismissal of the action.

On August 7 Carroll filed a resistance to the motion to dismiss. The motion alleged that (1) the cases the defendants cited in their motion to dismiss arose before the implementation of Iowa Rule of Civil Procedure 49(f); (2) rule 49(f) provides that service must occur within ninety days or, if good cause is shown for failure to provide the service, the court shall extend the time for an appropriate period; (3) Carroll previously set forth good cause for extending the time for his service in his previously filed motion for leave to extend time for service; (4) the court found good cause and extended the time for service up to and including June 26, 1998; and (5) Carroll effected service on all the defendants before June 26, 1998.

Foxhoven also filed his affidavit in support of the motion. Foxhoven stated that (1) upon filing the petition he checked with the Iowa Secretary of State and found no listing for C.R. England & Sons, Inc. or E & E Investment with that office, and (2) he took the names of the defendants from the accident report in this case. He also stated that he contacted a private investigator to locate the registered agents for the corporate defendants but gave no date as to when he contacted the investigator.

Foxhoven further stated that (1) the private investigator reported that there was a C.R. England & Sons, Inc. that had been registered as a corporation in Illinois, and the registered agent for the corporation was Philip Lee at 33 N. Deerborn, Suite 2400, Chicago, Illinois 60602; (2) the private investigator also reported that the State of Illinois had revoked the license of C.R. England & Sons, Inc. for failure to file an annual report and that there was no listing found for E & E Investment Company; (3) he—Foxhoven—continued to search for the correct location of the corporate defendants; (4) the private investigator found that C.R. England, Inc.—a corporation similar in name as the defendant listed in the accident report—was incorporated in Salt Lake City, Utah, and its registered agent was Keith Walus, Jr. at 4701 West 2100 South, Salt Lake City, Utah, 84120; and (5) the private investigator determined that C.R. England & Sons, Inc. had been incorporated in Utah in 1960 and that the corporation in Illinois had changed its name in Illinois from C.R. England & Sons, Inc. to C.R. England, Inc. Foxhoven also stated that he learned this information about the Salt Lake City corporation in June 1998.

The defendants filed a reply to Carroll's resistance and alleged that Carroll was aware of the defendants' addresses since February 1996. In support of this allegation, the defendants attached the correspondence, previously referred to, between Carroll's Mississippi lawyer and the claims representative for C.R. England & Sons, Inc.

The defendants also alleged in their reply that, on May 26, 1998 (166 days after the plaintiff had filed his petition), the plaintiff's Mississippi lawyer mailed a "courtesy copy" of his petition to the corporate defendants' general counsel. The defendants attached to their reply a copy of the cover letter that had accompanied the courtesy copy of the petition. The defendants further alleged that, on June 5, 1998 (176 days postfiling), the plaintiff—ex parte—filed for, and was improperly granted, an extension of time to obtain service on the defendants.

Following a hearing on the motion to dismiss, the district court (the same judge who had granted Carroll's motion to extend time for service) granted the defendants' motion to dismiss. The court found that the 195-day delay between the filing of the action and service of the original notice was "presumptively abusive of the guidelines set forth in R.C.P. 49." The court also found that the facts contained in Foxhoven's affidavit, "when viewed in conjunction with the documentary evidence attached to the defendants' reply, do not constitute adequate justification for the delay in this case." The court dismissed the petition against all the defendants.

Following Carroll's appeal from this latest ruling, we transferred the case to the court of appeals. The court of appeals reversed and remanded as to all three defendants. The court of appeals found that the district court's finding of inadequate justification for the delay in service was not supported by substantial evidence.

We granted the defendants' application for further review in which they contend that, contrary to the court of appeals, there was substantial evidence to support the district court's finding that there was inadequate justification for the delay in service.

**II. Whether There Was Substantial Evidence to Support the District Court's Finding of Inadequate Justification For the Delay in Service.**

■ **A. Matters outside the pleadings.** Motions to dismiss under Iowa Rule of Civil Procedure 104(b) (failure to state a claim on which any relief can be granted) are generally limited to the pleadings, and facts outside the pleadings are not to be considered. *Estate of Dyer v. Krug,* 533 N.W.2d 221, 223 (Iowa 1995). Summary judgment is the appropriate remedy when parties wish to rely on facts outside the pleadings. *Id.*

■ Nevertheless, we have permitted a resort to facts outside the pleadings when (1) those facts arise after the plaintiff has filed the petition, (2) the parties do not dispute those facts, and (3) the issues in the motion to dismiss do not concern the adequacy of the petition to state a claim for relief. *Id.*

■ Here, the district court did consider matters outside the pleadings when it granted the defendants' motion to dismiss. However, neither party voiced objection to this procedure. *See Berger v. General United Group, Inc.,* 268 N.W.2d 630, 634–35 (Iowa 1978) (matters outside the pleadings considered when parties voiced no objection to such procedure in the district court).

■ Additionally, a motion to dismiss for delay of service falls within the category of motions to dismiss that do not address the pleadings. We note that, in several cases in which delay in service was the issue, the district court and this court on appeal resorted to matters outside the pleadings in deciding the issue. *See, e.g., McCormick v. Meyer,* 582 N.W.2d 141, 145–46 (Iowa 1998); *Henry v. Shober,* 566 N.W.2d 190, 191 (Iowa 1997); *Alvarez v. Meadow Lane Mall Ltd. Partnership,* 560 N.W.2d 588, 589 (Iowa 1997). We therefore consider here matters outside the pleadings raised in the motion to dismiss,

the resistance, the reply to the resistance (including documents submitted in support of the resistance), and Foxhoven's affidavit in support of the resistance to the motion to dismiss.

**B. Rule 49, amendment to rule 49, and scope of review.** Pursuant to Iowa Rule of Civil Procedure 48, a plaintiff commences a lawsuit by filing a petition. When Carroll filed his lawsuit in December 1997, Iowa Rule of Civil Procedure 49 was in effect. Subsection (a) of the rule provides in relevant part:

> Written directions for the service of the original notice and copy of petition shall be delivered to the clerk with the petition. There shall also be delivered to the clerk with the petition the original notice to be served and sufficient copies of both.

Iowa Rule of Civil Procedure 49(b) directs that "[u]pon the filing of the petition the clerk shall *forthwith* deliver for service the original notice and copies, copies of the petition, and the directions for service to the sheriff, to a person specially appointed to serve it, or other appropriate person." Iowa R. Civ. P. 49(b) (emphasis added).

■ Rule 49 set no time limit within which service was to be accomplished. However, we have interpreted the rule as requiring dismissal of an action if there was an unjustified abusive delay in completing service. *See McCormick,* 582 N.W.2d at 145. Whether the delay was justified involved determining whether good cause existed for the delay. *Id.*

On January 24, 1998—one month after Carroll filed his petition—rule 49 was amended by adding subsection (f), which provides:

> If service of the original notice is not made upon the defendant, respondent, or other party to be served within 90 days after filing the petition, the court, upon motion or its own initiative after notice to the party filing the petition, shall dismiss the action without preju-

dice as to that defendant, respondent, or other party to be served or direct an alternate time or manner of service. If the party filing the papers shows good cause for the failure of service, the court shall extend the time for service for an appropriate period.

█ The district court granted the defendants' motion to dismiss under our cases interpreting rule 49 as it existed before the amendment. Neither party objected. Neither party filed an Iowa Rule of Civil Procedure 179(b) motion to preserve the issue that the amendment should apply. *Lawrence v. Grinde*, 534 N.W.2d 414, 418 (1995) (holding that party must file a motion to amend and enlarge under rule 179(b) in order to preserve an issue for appeal when the court fails to resolve an issue, claim, defense, or legal theory properly submitted to it for adjudication). We therefore decide this case under the cases interpreting rule 49 as it existed before the amendment.

█ Our review of a district court ruling on a motion to dismiss for failure to serve in a timely manner an original notice pursuant to rule 49 is for correction of errors at law. *McCormick*, 582 N.W.2d at 144. In circumstances in which, as here, the district court has made findings of fact, those findings are binding on appeal unless they are not supported by substantial evidence. *Id.* However, neither the district court's application of legal principles nor the court's conclusions of law are binding on appeal. *Id.*

**C. The merits.** Before proceeding to the merits, we must first address Carroll's contention that the district court should not have dismissed the case because (1) the court had previously made the findings contemplated by the rule, (2) the court granted the extension for a period of time, and (3) Carroll complied with the order.

█ We have long recognized that a district court has the power to correct its own perceived errors, "so long as the court has jurisdiction of the case and the parties involved." *McCormick*, 582 N.W.2d at 144. Until the district court has rendered a final order or decree, it has the power to correct any of the rulings, orders or partial summary judgments it has entered. *Hayes v. Kerns*, 387 N.W.2d 302, 308 (Iowa 1986). In short, a party has no vested interest in an erroneous ruling. *Davenport Bank & Trust Co. v. City of Davenport*, 318 N.W.2d 451, 455 (Iowa 1982).

█ Here, the district court's initial order extending time was not a final order. *Compare Wesley Retirement Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 28 (Iowa 1999) (noting that a final judgment or decision is "one that finally adjudicates the rights of the parties"), *with Recker v. Gustafson*, 271 N.W.2d 738, 739 (Iowa 1978) (holding that a ruling is merely interlocutory if it is not finally decisive of the case). Nor had the district court entered a final order or judgment in the case before granting the motion to dismiss. Additionally, when the court did grant the motion to dismiss, it had jurisdiction of the case and the parties.

The defendants correctly assert that the district court was not prohibited from revisiting its earlier determination that justification existed for the delay of service in this case. The authority to do so is particularly appropriate in circumstances in which, as here, the initial ruling is made ex parte. Simply put, it would seem appropriate for a court to revisit a prior ex parte ruling once all the relevant parties are before it.

█ As mentioned, dismissal is required if there is an unjustified abusive delay in completing service. *McCormick*, 582 N.W.2d at 145. Determining whether there is such a delay requires the following analysis. If there is a delay in service, the district court must first decide if the delay was presumptively abusive. *Id.* If the court finds the delay is presumptively abusive, the court must then decide if the plaintiff has shown the delay was justified.

*Id.* If the district court finds the delay was not justified, the court must dismiss the case. *Id.* In doing the analysis, the district court must keep in mind that once the petition is filed the plaintiff has the burden of making sure that the service of the original notice and petition is both proper and timely. *Id.*

We have equated justification for delay in service to good cause. *Id.* Good cause requires that

> "[t]he plaintiff must have taken some affirmative action to effectuate service of process upon the defendant or have been prohibited, through no fault of his [or her] own, from taking such an affirmative action. Inadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service have generally been waived as insufficient to show good cause. Moreover, intentional nonservice in order to delay the development of a civil action or to allow time for additional information to be gathered prior to 'activating' the lawsuit has been held to fall short of ... good cause...."

*Henry,* 566 N.W.2d at 192–93 (quoting *Vincent v. Reynolds Mem'l Hosp., Inc.,* 141 F.R.D. 436, 437–38 (N.D.W.Va.1992)). Additionally, we have recognized that a lengthy delay is indicative of a plaintiff who has filed a petition "not to seriously institute litigation, but rather to 'ice' the statute of limitations for a later determination on whether to proceed with suit." *Alvarez,* 560 N.W.2d at 591.

With these principles in mind, we proceed to consider whether there was substantial evidence to support the district court's finding that inadequate justification existed for the delay in service. (It is undisputed that the delay was presumptively abusive.) This case involves service of process upon three separate defendants: Rizaldo Martir, E & E Investment Co., and C.R. England & Sons, Inc. We address each in turn.

**1. Martir.** Carroll's primary contention throughout this case has been that he, through his attorney, was unable to locate a "proper person or agent for service of the corporate defendants." Setting aside for the moment the corporate defendants, Carroll gives no explanation why he needed additional time to serve Martir in his individual capacity.

The record shows that Martir was served under the same name and the same address as that shown in the January 1996 accident report. Carroll offered no reason to the district court explaining why he had failed to serve notice on Martir in a timely manner. Nor has he offered us any reason. As mentioned, Carroll has this burden. There was, therefore, substantial evidence supporting the district court's finding that inadequate justification existed for the delay in service of the original notice and petition on Martir.

To the extent that the court of appeals found justification for the delay in serving the original notice and petition upon Martir, we vacate this portion of its decision and affirm the district court ruling.

**2. C.R. England & Sons, Inc.** As to C.R. England & Sons, Inc., the record is clear that Carroll knew the location of this corporate defendant as early as February 9, 1996—less than a month after the accident. On that date, the claims representative for C.R. England & Sons, Inc. sent a fax to Carroll, and that fax had the company's name and address on it.

Additionally, Carroll, through his Mississippi counsel, had been in settlement negotiations with C.R. England & Sons, Inc. since early February 1996. The record clearly shows that Carroll's Mississippi counsel knew the name and address of C.R. England & Sons, Inc., as indicated by the names and addresses shown in the repeated written correspondence between the Mississippi counsel and C.R. England & Sons, Inc.

It is true we have no direct evidence that Foxhoven had actual knowledge that Mississippi counsel had located C.R. England & Sons, Inc. and had been involved in settlement negotiations with the company. However, we think the district court could reasonably infer that Foxhoven had such knowledge. It seems incredulous to us that Mississippi counsel would neglect to give Foxhoven this information.

In any event, Carroll, not Foxhoven, is ultimately responsible for accomplishing service. The question, therefore, is not simply what Carroll's Iowa counsel may or may not have known, but rather what Carroll himself knew.

■ The rule is that a client is charged with knowledge of matters known to the client's attorney, which matters the attorney learns through the course of representing the client. In short, knowledge of an attorney is knowledge of the client. *Nachazel v. Mira Co. Mfg.,* 466 N.W.2d 248, 252–53 (Iowa 1991); *State v. Roghair,* 390 N.W.2d 123, 125 (Iowa 1986); *Perpetual Sav. & Loan Ass'n v. Van Atten,* 211 Iowa 435, 437–39, 233 N.W. 746, 747 (1930); *see* 7A C.J.S. *Attorney & Client* § 180 n.57, at 284 (1980) (noting that attorney acts as the representative and alter ego of his client). There are several exceptions to the rule, but none apply here. *See Moser v. Thorp Sales Corp.,* 312 N.W.2d 881, 888 (Iowa 1981).

As mentioned, Carroll's Mississippi counsel knew the correct name and address of C.R. England & Sons, Inc. The law imputes that knowledge to Carroll. Therefore, as a matter of law, Carroll knew the location of C.R. England & Sons, Inc. Carroll can offer no justification for a prolonged search and delay in the service of the original notice and petition on this corporate defendant. There was therefore substantial evidence to support the district court's finding that inadequate justification existed for the delay in service. The court of appeals erred in concluding otherwise. We must therefore vacate the court of appeals decision as to this defendant and affirm the district court ruling.

■ **3. E & E Investment Co.** Although we uphold the district court's ruling as to E & E Investment Co. on a different basis, the following discussion applies with equal force to C.R. England & Sons, Inc.

Carroll waited nearly 175 days after he filed his petition before asking for an extension of time. The district court could reasonably infer that Carroll had done nothing until then to serve E & E Investment. (Foxhoven's resistance and affidavit give no hint as to when he hired the investigator or began seriously searching for the location of this corporate defendant.) Carroll had the burden to show that he tried to serve the defendants in a reasonably short period of time after the petition was filed.

Additionally, had Carroll simply used the nonresident motorist statute immediately, using the last known address, he might have been successful in effectuating service. (We are mindful that such service is not good unless the defendant's actual location is established. *See Emery Transp. Co. v. Baker,* 254 Iowa 744, 749–50, 119 N.W.2d 272, 276 (1963)). The address for the two defendants as it appears in the accident report was 4701 W. 2100 South W. Valley City, Utah, 84120. The actual address is 4701 W. 2100 South, Salt Lake City, Utah 84120. Given this degree of similarity, service under the nonresident motorist statute might have been successful. Again, Carroll had the burden to show that he at least tried to serve E & E Investment under the nonresident motorist statute in a reasonably short period of time after the petition was filed.

Contrary to the court of appeals, we conclude there was substantial evidence to support the district court's finding that there was inadequate justification for delay in service as to E & E Investment. We therefore vacate the court of appeals deci-

sion as to this defendant and affirm the district court ruling.

The 195–day delay in serving the defendants together with the totality of the circumstances suggests an attempt to "ice" the statute of limitations so that more time could be given to settlement negotiations. *See Alvarez*, 560 N.W.2d at 591 (holding that any delay in service beyond 120 days "indicates the plaintiff filed the petition, not to seriously institute litigation, but rather to 'ice' the statute of limitations for a later determination on whether to proceed with suit"). Under the facts here, we think the district court would have been justified in so finding.

### III. Disposition.

In sum, we conclude there was substantial evidence to support the district court's finding that there was inadequate justification for the delay in service on all three defendants. The district court therefore correctly dismissed the plaintiff's petition. We vacate the court of appeals decision to the contrary and affirm the district court judgment.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

---

* NEUMAN, J., taking no part.