# IN THE COURT OF APPEALS OF IOWA

No. 21-2003
Filed December 21, 2022

**JOSEPH JOHNSTON,**
Plaintiff-Appellee,

**vs.**

**HOLLIE McCARGAR,**
Defendant-Appellant,

**and**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Defendant.

_____

Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

A motorist sued for negligence appeals the denial of her motion to dismiss for untimely service of the petition. **AFFIRMED.**

Elizabeth A. Culhane and Sarah M. Dempsey (until withdrawal) of Fraser Stryker PC LLO, Omaha, Nebraska, for appellant.

Jason D. Walke of Walke Law, LLC, West Des Moines, for appellee.

Considered by Bower, C.J., Tabor, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**TABOR, Judge.**

In this interlocutory appeal, we must decide if good cause existed to extend the deadline to serve Joseph Johnston's petition on defendant Hollie McCargar. McCargar contends the district court erred in finding that Johnston's settlement negotiations with her insurer justified an extension. After examining all the facts surrounding Johnston's failure to serve McCargar within ninety days, we find "understandable mitigating circumstances" amounting to good cause. *Rucker v. Taylor*, 828 N.W.2d 595, 603 (Iowa 2013) (citation omitted). We thus affirm the denial of McCargar's motion to dismiss.[1]

### I. Facts and Prior Proceedings

Johnston and McCargar were involved in a motor vehicle accident in early May 2019. According to Johnston, he was waiting for a stoplight to change when McCargar's vehicle rear-ended him. After the collision, Johnston reported neck, shoulder, and back pain. In a lawsuit filed on April 29, 2021, Johnston alleged that McCargar's negligence caused the accident.

Johnston had until July 28 to serve McCargar with original notice of the suit. *See* Iowa R. Civ. P. 1.302(5) (setting ninety-day deadline). He anticipated he would not be able to complete service by that date. Instead, on July 14, his attorney, Jason Walke, sought an extension of forty-five days. Walke asserted that he was "in active discussions with the insurance company for the tort Defendant to try to resolve this matter." Walke continued: "A short amount of additional time

---

[1] The other defendant is State Farm Mutual Auto Insurance Co. (State Farm), Johnston's insurer. State Farm took no position on the motion to dismiss and is not a party to this appeal.

is needed in order to complete (either by settlement or a failure to reach a settlement) those discussions." On July 16, the court granted the request, setting a new service deadline of September 10. Johnston served McCargar with the petition on August 25.

But McCargar insisted that service was too late. On September 14, she moved to dismiss the suit under rule 1.302(5). *See* Iowa R. Civ. P. 1.421(1).

Johnston resisted dismissal, alleging he had good cause to extend the deadline. As evidence of that good cause, attorney Walke recounted his communication with representatives of GEICO Casualty Co. (GEICO), McCargar's insurer, between spring and fall of 2021. First, in March, Walke asked the original claims examiner for copies of any records concerning his client. In May, soon after he filed Johnston's petition, Walke received notice that GEICO had reassigned the case to claims examiner Kiki Bell. Walke told Bell he would "send a settlement packet to GEICO before serving the lawsuit" on McCargar. According to Walke, Bell agreed to that approach.

But as spring gave way to summer, Walke realized he could not assemble the settlement packet before the ninety-day service deadline. In the resistance, he explained that a family health crisis and a support staff departure from his solo law practice contributed to the delay. So, two weeks before the ninety-day deadline, Walke sought and received the extension until September 10.

Walke recalled that the same day he filed the extension request, July 14, he left Bell a voicemail detailing his difficulties in finishing the settlement packet

and sharing his intent to seek more time to serve McCargar.[2]  In the message, Walke also asked Bell to send photographs of the vehicles involved in the accident. Later that day, Bell did just that.

Also in the resistance, Walke noted that he sent the settlement packet to Bell on August 11.[3]  Six days later, Bell acknowledged its receipt.  She wrote: "Once we've completed our evaluation, we'll contact you to discuss the resolution of your client's claim."  Bell followed up with a settlement offer the next day.  After further negotiation by phone, on August 23, Walke rejected GEICO's offer as "not even close" to Johnston's accident expenses.  Then two days later, McCargar received service of the petition.

As Walke further details in the resistance, Bell contacted him again one week after the suit was served on McCargar.  After some phone tag, Walke and Bell resumed settlement talks with GEICO increasing its offer.

McCargar replied to the resistance, contending the question before the court was whether the GEICO representative "implicitly or affirmatively agreed" that Johnston did not have to serve its insured within ninety days of filing suit.  She also attached an affidavit from Bell avowing that she "did not agree, verbally or in writing, to an extension for the deadline" for serving the petition.

---

[2] McCargar asserts "there is no evidence" that Walke told Bell he was going to ask for an extension of the service deadline.  But the district court was entitled to consider Walke's professional statement in the pleadings that he did so. *See, e.g.*, *State v. Brewer*, 247 N.W.2d 205, 212 (Iowa 1976) (explaining a professional statement "is a technique, used as a matter of convenience . . . , to establish a record of matters peculiarly within the knowledge of an attorney" that "has the effect of an affidavit").

[3] Apparently crossing in the mail, a letter sent by Bell on August 12 asked the status of Johnston's settlement demand.

The district court denied McCargar's motion to dismiss, noting that Walke "was actively negotiating with the insurance company prior to serving the petition." McCargar successfully sought interlocutory review and a stay of the proceedings pending this appeal.

## II.    Scope and Standard of Review

We review the district court's denial of McCargar's motion to dismiss for correction of legal error.  *See Rucker*, 828 N.W.2d at 598. While the pleadings ordinarily form the boundaries of material to be evaluated in deciding a motion to dismiss, when the motion is based on failure to provide timely service, a court may consider facts outside the pleadings.  *Id.* at 598–99.  So long as the district court's findings of fact are supported by substantial evidence, they are binding on appeal. *Id.* at 599 (differentiating fact-findings from legal conclusions or application of legal principles, which are not binding on review).

## III.    Analysis

McCargar contends the district court erred in extending time for service and in denying her motion to dismiss premised on Rule 1.302(5).  That rule sets out both the ninety-day service deadline and how it may be extended:

> If service of the original notice is not made upon the defendant. . . within 90 days after filing the petition, the court, upon motion or its own initiative after notice to the party filing the petition, shall dismiss the action without prejudice as to that defendant . . . .
> If the party filing the papers shows good cause for the failure of service, the court shall extend the time for service for an appropriate period.

Iowa R. Civ. P. 1.302(5).

McCargar moved to dismiss the action because Johnston did not serve her notice until 118 days after filing suit.  Relying on *Rucker*, the district court refused

to dismiss the action, finding that ongoing settlement negotiations between Walke and Bell constituted good cause for allowing more time to complete service. *See* 828 N.W.2d at 601. McCargar contests the court's good-cause finding. Citing *Antolik v. McMahon*, she insists that Johnston's "desire to engage in settlement discussions" did not justify extending the service deadline. *See* 744 N.W.2d 82, 85 (Iowa 2007). In *Antolik,* the supreme court relied on the principle that "[s]ettlement negotiations, even if done in good faith, do not constitute . . . good cause for delaying service." *Id.* (quoting *Henry v. Shober,* 566 N.W.2d 190, 193 (Iowa 1997)).

But the supreme court revisited that principle in *Rucker* and "erased any bright line previously indicating settlement negotiations can never constitute good cause for a delay in service." *Feldhacker v. West*, No. 12-2003, 2013 WL 3855694, at *5 (Iowa Ct. App. July 24, 2013). *Rucker* explained that although settlement negotiations have not historically constituted good cause for delaying service, instances exist in which dismissal against that backdrop would be unfair. *See Rucker*, 828 N.W.2d at 603. The court explained the good-cause standard "considers all the surrounding circumstances, including circumstances that would make it inequitable for a defendant to successfully move to dismiss." *Id.* at 601.

The facts here resemble those in *Rucker*.[4] For starters, McCargar emphasizes that GEICO did not agree to extend the service deadline and points

---

[4] In some ways, the facts here suggest a greater inequity were we to reverse the district court. For instance, in *Rucker*, plaintiff's counsel did not serve original notice on the defendants until receiving a reminder from the district court administrator six days after the ninety-day period had expired. 828 N.W.2d at 597. By contrast, Walke took a proactive approach and obtained an extension two weeks before the original deadline.

to Bell's affidavit confirming that she entered no such agreement. But *Rucker* rejects the notion that a plaintiff is required to offer "proof of an enforceable contract before good-faith settlement negotiations can support a finding of good cause." *Id.* at 603. Rather, it is enough if counsel communicates a "plan to purposely delay service of process" to defendant's insurance representative. *Id.* And with knowledge of that plan, the insurer continues to negotiate with the attorney. *Id.*

Like plaintiff's counsel in *Rucker*, Walke informed Bell after filing the petition that he planned to deliver "a settlement packet to GEICO before serving the lawsuit" on McCargar. She agreed to that approach. When Walke realized he would not be able to present his offer to GEICO within the ninety days, he both (1) informed Bell and (2) asked for a forty-five day extension for service, which the court granted. We find it significant that Walke asked for that extension two weeks before the ninety days expired. Had the court denied his request, he would still have had time to serve McCargar within the original timeframe. Instead, the court issued an order with a new deadline, which Walke met.[5]

And like the insurance representative in *Rucker*, Bell continued to negotiate with Walke, even after knowing that he had obtained an extension of time to serve McCargar. Those ongoing communications[6] reinforced Walke's expectation that

---

[5] We realize the court's initial grant of more time for service was not a final order and could be reconsidered when deciding a motion to dismiss. *See Carroll v. Martir*, 610 N.W.2d 850, 857 (Iowa 2000). But it also seems reasonable for Walke to rely on that court order in conducting the ongoing negotiations with Bell.

[6] McCargar argues the exchanges between Bell and Walke before the ninety days elapsed were not settlement communications as defined in Iowa Rule of Evidence 5.408(a)(1). We do not find that argument convincing. Even if that rule defined settlement communications for evidentiary purposes, we do not believe that *Rucker* contemplates such a narrow definition.

he did not have to comply with the original service deadline. *See Rucker*, 828 N.W.2d at 603. Bell was not obliged to endorse Walke's plan to delay service. *See id.* Yet, her conduct in continuing to negotiate with knowledge that the court had set a new deadline for service made it "understandable" that Johnston did not serve McCargar within the original ninety days. *See id.* As the district court found, it was inequitable for McCargar to seek a dismissal under these circumstances.

Two further points. First, as noted in *Rucker*, the purpose of rule 1.302(5) is "to move cases along in the court system once they have been filed." *Id.* at 600. Our holding today does not undermine that purpose. Walke sought an extension two weeks before the original deadline and served the petition two weeks before the extended deadline, as soon as negotiations appeared to break down. This case did not languish on the docket after being filed. *See id.* at 604 (explaining the federal analog to rule 1.302(5) was intended as "a useful tool for docket management, not an instrument of oppression" (citation omitted)). Second, Iowa courts prefer to decide cases on their merits. *See Rucker*, 828 N.W.2d at 603 ("Because the substantive rights of a plaintiff can be at stake through the application of a statute of limitations, it is important that the good-cause standard under rule 1.302(5) not be applied too narrowly."). Today's result reinforces that preference.

**AFFIRMED.**