# IN THE COURT OF APPEALS OF IOWA

No. 15-0221
Filed April 6, 2016

**WISCHMEIER FARMS, INC.,**
        Plaintiff-Appellee/Cross-Appellant,

**vs.**

**GREGORY WISCHMEIER,**
        Defendant-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Des Moines County, Cynthia H. Danielson (summary judgment) and John G. Linn (trial), Judges.

A tenant appeals the district court ruling concerning the crop-share lease he entered into with his family's farm corporation. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

William R. Jahn Jr. of Aspelmeier, Fisch, Power, Engberg & Helling, P.L.C., Burlington, for appellant/cross-appellee.

Elliott R. McDonald III and Ryan F. Gerdes of McDonald, Woodward & Carlson, P.C., Davenport, for appellee/cross-appellant.

Heard by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

This appeal involves a contract dispute between tenant Gregory Wischmeier and landlord Wischmeier Farms, Inc.[1]—a corporation started by Gregory's late father Howard and now directed by four of Gregory's five siblings. The corporation sought declaratory relief and damages for Gregory's alleged breaches of a crop-share lease and attached addendum. Gregory counterclaimed, alleging the corporation breached the contract's terms and urging the court to consider the course of performance established before his father died. After a bench trial, the district court largely ruled in favor of the corporation.

On appeal, Gregory argues seven issues: (1) his right to use the corporation's farm equipment when farming non-corporate land he owns or rents; (2) the corporation's responsibility for fuel costs as an input costs; (3) the corporation's responsibility for the costs of hauling grain to market; (4) the corporation's authority to sell farm equipment; (5) the corporation's authority to designate the land Gregory can use for pasture and the land he can till; (6) the corporation's obligation to repair farm equipment; and (7) court costs and attorney fees. The corporation cross-appeals, raising three issues: (1) Gregory's failure to pay his share of crop inputs purchased in 2009 before execution of the lease; (2) Gregory's right to keep his livestock on corporate land; and (3) attorney fees.

---

[1] Throughout this decision, we will use the terms "corporation" and "landlord" interchangeably to refer to Wischmeier Farms, Inc. We will sometimes refer to Gregory as the tenant.

As shown by both parties' requests for declaratory judgment, our ruling will have a preclusive effect concerning Gregory's liabilities in the future years of the lease. Persuaded by three of Gregory's arguments, we partially reverse the court's judgment, concluding (1) the contract does not prohibit Gregory's use of corporate farm equipment on the non-corporate land he owns or rents, (2) the contract does not authorize the corporation to sell corporate farm equipment Gregory used in the operation, and (3) the contract does not allow the corporation to dictate what corporate land Gregory uses for pasture and what land he tills. On the remaining issues, we affirm the bench trial ruling. We remand the case for the district court to enter declaratory judgment consistent with this opinion and to recalculate reasonable trial attorney fees, expenses, and court costs. The court on remand should also, in the first instance, tax reasonable appellate attorney fees.

## I. Background Facts and Proceedings

Howard and Helen Wischmeier raised six children[2] and owned a family farm consisting of just under 604 acres[3] in Des Moines County. The parents filed articles of incorporation creating Wischmeier Farms, Inc., in 1976. Helen died in 2006. After her death, Howard continued to farm with his sons Daniel and Gregory.

Gregory signed a farm lease with his father, who was then the president of the farm corporation in April 2010. This ten-year, crop-share lease was prepared

---

[2] The four sons and two daughters are Dennis Wischmeier, Sheryle Lonergan, Joseph Wischmeier, Gregory Wischmeier, Daniel Wischmeier, and Barbara Lebjedahl.

[3] About 485 acres were tillable and the other 119 acres remained as pasture and timber.

by the corporation's attorney, Steve Swanson, using a standard Iowa State Bar Association (ISBA) form. The lease stated the input costs and expenses of the farming operation would be "split 50/50" between the tenant and the corporation. At Howard's request, attorney Swanson drafted an addendum to the form lease that addressed Gregory's right to use the farm equipment owned by the corporation, the process for replacing that equipment, and Gregory's right to reside in the house located on the farm without paying rent. The corporate board of directors—then Howard, Gregory, and Daniel—approved the lease by ratifying consent minutes. The language of the lease and addendum are the subject of this appeal.[4]

Howard died in August 2012. Two months after Howard's death, Gregory's siblings voted in a new corporate board of directors. The new

---

[4] In preparation for our later analysis, we set out the "Addendum to Farm Lease" in its entirety:

> Included as a part of this Farm Lease shall be the right granted to the Tenant to use any and all farm equipment owned by the Landlord. Tenant shall maintain such equipment. If, however, a piece of equipment breaks down and must be replaced, it shall be replaced by both the Landlord and Tenant paying an equal cost of the replacement equipment, with the Landlord being given credit for any trade-in value. The new equipment shall then be owned jointly by both parties.
>
> Landlord also owns land on which a residence is located in which Howard Wischmeier presently resides. Landlord believes that it is necessary and appropriate to have a presence on the farm, which Howard Wischmeier has been able to provide during the period he has resided in the residence. Therefore, [Howard's] right to reside in the residence located on the farm shall continue for so long as he is able to use it as his principal residence. At the time he ceases to use it as his principal residence, it shall be included as a part of this lease agreement. No additional rent shall be required of the Tenant [Gregory] once he moves into the residence. Furthermore, the Landlord shall continue to be responsible for taxes and insurance. Tenant shall keep the residence properly maintained, with any major repairs, that being repairs that cost in excess of $3000.00, to be paid by the Landlord.

directors included Dennis as president, Joseph as vice president, Sheryle as secretary, and Barbara as a member. The board did not include Daniel or Gregory. The new directors presented Gregory with a notice concerning what they believed were "violations of the terms of the lease" and demanded he negotiate concerning a purchase of the corporate farm equipment or they would "proceed with legal action" to terminate the lease.[5]

Less than one year after Howard's death, in June 2013, the corporation filed a petition for declaratory judgment and a request for monetary damages against Gregory as the tenant. Gregory filed an answer, also sought declaratory judgment, and asserted counterclaims. Gregory sought partial summary judgment on certain claims in April 2014, including his right to use the corporate farm equipment on non-corporate land. From 2010 forward, Gregory had farmed an additional 320 to 382 acres that he either owned himself or leased from third parties. On August 1, 2014, the district court ruled:

> The language granting [Gregory] the right to use [the corporation's] farm equipment is clear and unambiguous. Therefore, extrinsic evidence is unnecessary. [Gregory] has met [his] burden to show that no genuine issue of material fact remains on [the] question of [Gregory's] right under the contract to use [the corporation's] farm machinery. Summary judgment on this issue is granted in favor of [Gregory].

The court also decided Gregory had met his burden to show no genuine issue of material fact on his lack of an obligation to pay rent for using the corporation's farm equipment. The court denied all other claims for summary judgment.

---

[5] Upon Howard's death, the six children each received a one-twelfth share of the corporation; the remaining one-half interest was held by Gregory and Dennis as trustees of Howard's inter vivos trust.

The district court, with a different judge presiding, held a bench trial on August 5 and 6, 2014. Gregory, several of his siblings, and attorney Swanson testified. On November 13, 2014, the court issued a thorough ruling, addressing in detail the many contentions of the parties. The court concluded all issues remained in dispute because the summary judgment ruling was not a final order.[6] Concerning Gregory's use of the corporate farm equipment on non-corporate farmland, the court determined the previous ruling on partial summary judgment was "erroneous," holding: "[W]hen Gregory uses the landlord's farm machinery and equipment on farmland which is not a part of the lease agreement, Gregory is in breach of the lease." The numerous additional issues were resolved largely in favor of the corporation. The court held a separate hearing in December 2014 to determine the taxation of reasonable attorney fees. Thereafter, the court ordered Gregory to pay the corporation $26,561.95 for attorney fees and expenses and taxed court costs to Gregory. Gregory appeals, and the corporation cross-appeals.

## II. Scope and Standards of Review

Our standard of review for a declaratory judgment action depends on how the district court tried the case. *Van Sloun v. Agans Bros., Inc.,* 778 N.W.2d 174, 178 (Iowa 2010). Because the district court docketed this case as a law action, and tried it by ordinary procedure, we review for correction of legal error. *See*

---

[6] Our supreme court has recognized a district court's power to correct its own perceived errors, "so long as the court has jurisdiction of the case and the parties involved." *Carroll v. Martir*, 610 N.W.2d 850, 857 (Iowa 2000). Until the district court has rendered a final order, it may correct any rulings, orders, or partial summary judgments it had entered. *Id.* "In short, a party has no vested interest in an erroneous ruling." *Id.*

*Okoboji Camp Owners Co-op. v. Carlson*, 578 N.W.2d 652, 653–54 (Iowa 1998). We also review a breach-of-contract claim tried at law to the district court for correction of legal error. *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). The district court's factual findings have the effect of a special verdict and are binding on us if supported by substantial evidence. *Id.* But the district court's legal conclusions and application of legal principles are not binding on us. *Id.*

Because a lease is a contract, we apply ordinary principles of contract law to determine the meaning of its terms and their legal effect. *See Alta Vista Props., L.L.C. v. Mauer Vision Ctr., P.C.*, 855 N.W.2d 722, 727 (Iowa 2014). *Interpretation* is the process of determining the meaning of the words in the contract, while *construction* is the process of deciding their legal effect. *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435 (Iowa 2008). "[I]nterpretation of the contractual language is the first step towards proper contract construction— the process that occurs when a court determines the legal effect an agreement will have." Richard A. Lord, *Williston on Contracts* § 30:1 at 9-10 (4th ed. 2012).

"When a case is tried to the court, as here, the distinction [between interpretation and construction] has importance in relation to our scope of review." *Connie's Constr. Co. v. Fireman's Fund Ins. Co.*, 227 N.W.2d 207, 210 (Iowa 1975). We review the district court's interpretation as a legal issue unless the interpretation depended on extrinsic evidence. *Fausel v. JRJ Enters. Inc.*, 603 N.W.2d 612, 618 (Iowa 1999). In that case, the "question of interpretation is left to the trier of fact unless the evidence is so clear that no reasonable person

would determine the issue in any way but one." *Id.* (citation omitted). "[W]e always review construction as a legal issue." *Id.* With respect to such questions of law, we are not bound by the district court's determinations. *Westhoff v. Am. Interinsurance Exch.*, 250 N.W.2d 404, 408 (Iowa 1977).

We generally review a district court's attorney-fee order for an abuse of discretion. *NevadaCare*, 783 N.W.2d at 469.

## III. Analysis

The parties raise a spate of objections to the district court's reading of the farm lease and addendum. Underlying their objections is a bitter dispute between Gregory and his siblings concerning enforcement of the lease and addendum where the contract terms either do not address or appear at odds with certain practices followed by Gregory and Howard after the inception of the agreement.

Against that backdrop, to determine the meaning of the lease and addendum we start by highlighting several "rules in aid of interpretation" set out in the Restatement (Second) of Contracts. *See Passehl Estate v. Passehl*, 712 N.W.2d 408, 415 (Iowa 2006) (keeping these rules in mind when considering the language of an agreement). Section 202 provides, in pertinent part:

> (1) Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight.
> (2) A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.
>  . . . .
> (4) Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any

course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.

(5) Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade.

Restatement (Second) of Contracts § 202 (Am. Law Inst. 1979).

With these interpretive aids at hand, we turn to the individual contentions of the parties, grouping their issues into four categories: (A) disputes involving the corporate farm equipment; (B) disputes involving crop inputs and costs for marketing the grain; (C) a dispute involving Gregory's livestock; and (D) attorney fees and costs.

## A. Corporate Farm Equipment

### 1. Did Gregory breach the contract by using corporate farm equipment on non-corporate farmland he owned or rented?

From 2010 forward, Gregory used farm equipment owned by the corporation not only to farm the land governed by the lease, but also to farm other land he either owned or leased from third parties. Gregory contends the addendum to the lease reveals the consent of his father and the corporation to his use of the corporate farm equipment outside the tenancy in this manner. But the corporation—by its new directors—alleges Gregory breached the lease by using "the landlord's farm equipment on farm ground not included in the leased ground." The corporation claims it incurred damages as measured by the fair rental value of the corporate farm equipment Gregory used on non-corporate land from 2010 through 2014. The district court initially decided this issue in

Gregory's favor, granting him partial summary judgment, but reversed course after the bench trial.

To decide the parties' intent regarding Gregory's use of corporate farm equipment on non-corporate farmland, the district court compared and reconciled clauses in the ISBA's farm-lease form and the addendum drafted by the corporation's attorney. The ISBA form contained the following sentence: "All necessary farm machinery and equipment, as well as labor, necessary to carry out the terms of this Lease shall be furnished by and at the expense of the Tenant." In contrast, the "Addendum to Farm Lease" opened with this sentence: "Included as a part of this Farm Lease shall be the right granted to the Tenant to use any and all farm equipment owned by the Landlord."

After the bench trial, the court found it "noteworthy" that the sentence in the ISBA form placing responsibility for farm equipment on the tenant was "never crossed out or deleted." The court believed the ISBA form and addendum were "not necessarily contradictory, and in fact, can be interpreted in a harmonious way." The court offered this interpretation: "[T]o carry out the farm lease, the tenant shall furnish all necessary farm machinery and equipment, at his expense, and in addition, the tenant has the right to use the landlord's farm equipment." The court further observed, "[T]he lease does not specifically grant to the tenant the right to use the landlord's equipment on farmland which is not the subject of the farm lease." The court rejected the summary-judgment court's reasoning that because the lease contained no restrictions, "Gregory's use of the landlord's [farm equipment] was unfettered and absolute." The court believed Gregory's

position "ignore[d] the basic subject matter that is the essence of the lease," reasoning:

>     It is a contract [that] allows the tenant to rent the farmland owned by the landlord and to pay the landlord rent of fifty percent of the crop raised. The controlling contract governs only the [landlord's] farmland.  On page 3, paragraph 4 [of the ISBA form], the tenant is required to furnish all necessary  machinery and equipment, as well as labor, necessary to carry out the terms of the lease, at the expense of the tenant.  Since the lease then additionally grants to the tenant the right to use the landlord's farm equipment, this addendum should be interpreted as applying to the land which the tenant is renting.

The court viewed the absence of language addressing equipment use on non-corporate land as precluding the practice: "If the lease granted to Gregory the right to use the landlord's [farm equipment] on land not covered by the lease, it was incumbent upon the parties to include that language in the written addendum."  The court accepted the corporation's argument that "[t]o construe and interpret the lease to grant Gregory the unrestricted use of the landlord's machinery would lead to illogical and untenable results."  The court gave the example of Gregory using the corporate farm equipment to do custom work for other farmers for cash and keeping all of the proceeds.

On appeal, Gregory argues the court erred in trying to reconcile the ISBA form and the addendum language.  He contends: "The language in the Addendum squarely contradicts the boilerplate language inasmuch as the Tenant is *not* obligated to provide all machinery and equipment to carry out the terms of the Lease at his expense."  He also contends the "personalized" language in the addendum supersedes the boilerplate language in the ISBA form.  *See* Restatement (Second) of Contracts § 203(d) (noting "separately negotiated or

added terms are given greater weight than standardized terms"). Gregory further claims the two provisions create an ambiguity that should be construed against the drafter, in this case attorney Swanson who represented the corporation. *See Dickson v. Hubbell Realty Co.*, 567 N.W.2d 427, 430 (Iowa 1997).

At trial, Swanson testified he drafted the addendum after Howard told him he wanted Gregory "to be able to use the farm equipment at no cost." The district court recalled Swanson testifying that his intent as the drafter was to confine Gregory's use of the equipment to the corporate farmland. But during his testimony, Swanson also acknowledged the lease did not squarely address whether Gregory could operate the corporate farm equipment on non-corporate land. Specifically, Swanson testified: "Nobody said anything about where it could be used, but . . . my thought was it was connected with this land that was being leased." The following exchange with Swanson indicated his uncertainty concerning how he would have drafted the lease to reflect Gregory's ability to use corporate equipment on non-corporate land:

> Q. If it were your understanding through your communications with Greg or Howard Wischmeier that Greg would be allowed to use the equipment on his own farming operation or to custom farm somebody else's property, would you have drafted the lease Addendum differently? A. That's a difficult one to answer, but I– because I don't know what I would have done knowing that, but possibly. Possibly, I would have.

In the absence of express terms in the lease and addendum concerning Gregory's use of the corporate farm equipment on non-corporate land, Gregory asks us to enforce his request for declaratory judgment in accordance with "the course of performance established between the parties for the two-and-a half

years after the contract was signed," which course of performance was "supported in many respects by the course of dealing between the parties prior to contract execution." *See* Restatement (Second) of Contracts §§ 202(4), (5) (discussing course of performance and course of dealing); 203(b) (providing standards of preference for interpretation of an agreement).

On appeal, the corporation agrees with Gregory that the addendum language "was clearly intended to modify Paragraph 4 of the [ISBA form] Lease; if read any other way, the Lease would contain an unresolvable inconsistency between the two clauses." But the corporation contends Gregory is reading the first sentence of the addendum in isolation. The corporation argues, when viewed in the context of the entire lease, the addendum gives the tenant the right to use the corporate equipment only while farming the land covered by the lease.

The corporation does not believe the parties' course of dealing or course of performance helps determine their intent under the lease. The corporation acknowledges both Gregory and his brother Daniel used the corporate farm equipment in their separate farming operations under an informal agreement with their father. According to the corporation, that informal agreement has no relevance in determining the parties' intent under the disputed lease. The corporation asserts, after Howard died "the discretion for the use of the [farm equipment] passed to the succeeding officers and directors of the corporation."

Our resolution of this issue involves contract construction, rather than interpretation of the contract terms. The parties are not debating the meaning of the words used in the first sentence of the addendum, but rather the legal effect

of that provision granting the tenant the right "to use any and all farm equipment owned by the Landlord." Accordingly, our review here is for legal error, and we do not review under a substantial-evidence standard. *See Fausel*, 603 N.W.2d at 618 ("We always review construction as a legal issue.").

We believe the district court erred in concluding Gregory breached a term of the lease by using the corporate equipment on non-corporate land he owned or rented from third parties. The district court and the corporation mistakenly read the first sentence of the addendum as just another provision of the crop-share lease; in this vein, the district court opined: "The controlling contract governs only the [the corporation's] farmland." In actuality, the addendum supplements the lease, addressing two issues related to, but distinct from the crop-share arrangement. *See* Black's Law Dictionary 38 (7th ed. 1999) (defining "addendum" as "a supplement"). The addendum's first paragraph sets out Gregory's right to use the corporate farm equipment, as well as conditions leading to a future joint purchase of farm equipment by the corporation and Gregory. The addendum's second paragraph discusses the farmhouse. Both paragraphs afford rights to the tenant beyond his role in a crop-share operation.

Specifically, the first paragraph facilitates the intent of Howard and the corporation to make corporate equipment available for Gregory's use. Not only does the first sentence grant Gregory the right to use "any and all equipment owned by the Landord" without an express restriction for Gregory's use only on corporate ground, but the next three sentences anticipate and resolve how that equipment will be maintained and replaced when it breaks down:

> Tenant shall maintain such equipment. If, however, a piece of equipment breaks down and must be replaced, it shall be replaced by both the Landlord and Tenant paying an equal cost of the replacement equipment, with the Landlord being given credit for any trade-in value. The new equipment shall then be owned jointly by both parties.

We do not believe Gregory would have agreed to pay half (or more than half considering the landlord's trade-in credit) of the purchase price of costly farm equipment under the addendum only to then be restricted in using that jointly owned equipment exclusively on corporate land and only for any remaining term of the lease. *See Sickles v. Lauman*, 169 N.W. 670, 673 (Iowa 1918) (hesitating to construe contract in a manner that would yield "inequitable and absurd results"). The more reasonable construction is that the parties intended Gregory would continue to use the corporation's equipment in the same manner he had used it both before and after the parties' executed the 2010 contract. *See* Restatement (Second) of Contracts § 202(4), (5) (discussing course of performance and course of dealing).

In his appellant's brief, Gregory also dispels the bench ruling's concern that the "erroneous" summary judgment would lead to Gregory loaning the equipment to neighbors or friends free of charge. Gregory contends the course-of-performance doctrine would limit his "continued use of the corporate [equipment] to that which was consistent with the parties' performance after the contract was signed." We agree with Gregory's proposed construction as guided by the parties' course of performance.

Our conclusion is bolstered by the second paragraph of the addendum, which provides Gregory with the right to move into the residence located on the

farm. Under that paragraph, the corporation continues to pay taxes and insurance on the residence, while Gregory maintains the property. Any major repairs are the obligation of the corporation. Gregory's right to live in the residence after his father was unable to stay there, specifically "as a part of the lease agreement," indicates the addendum was drafted to address perquisites for Gregory over and above his fifty-fifty crop-share rights and obligations under the ISBA form lease.

While the district court's construction isolates the first sentence from the remainder of the addendum, we believe it is more reasonable to view the disputed language in the context of the whole addendum. *See Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 798 (Iowa 1999). Accordingly, in the absence of language prohibiting Gregory from using the corporate equipment on non-corporate farmland, we construe the meaning of the addendum's opening sentence as perpetuating the parties' agreed-upon course of performance.

Further, a contract provision "is ambiguous if it is reasonably susceptible to more than one construction." *Gildea v. Kapenis*, 402 N.W.2d 457, 459 (Iowa Ct. App. 1987). In this case, two experienced district court judges reached opposite results concerning the meaning of the disputed sentence. To the extent the first sentence is ambiguous as to Gregory's right to use the corporate farm equipment on non-corporate land, we construe that ambiguous provision against the drafter, the corporation. *See Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991) (explaining "[a]mbiguity exists when, after application of pertinent rules of interpretation to the face of the instrument, a

genuine uncertainty exists concerning which of two reasonable constructions is proper").

Because we find legal error in the bench ruling's construction of the first sentence of the addendum, we reverse the order requiring Gregory to pay $33,850 in damages to the corporation for his use of corporate equipment on non-corporate land. We also reverse the court's declaratory judgment ruling because we conclude Gregory has the contractual right to use the corporate equipment on non-corporate land he owns or rents in accordance with the parties' established course of performance after executing the contract. We remand for entry of a declaratory judgment consistent with this ruling.

## 2. Did the corporation have the authority to sell three pieces of equipment Gregory used in the farm operation?

Gregory also argues the district court wrongly determined the corporation had the authority to sell three pieces of equipment: a New Holland haybine, a John Deere 7330 tractor, and a 326 D uniloader. The district court concluded because the corporation "owns this machinery outright, . . . [it] has the right to sell this equipment."

Gregory contends allowing the corporation to sell this farm equipment is at odds with the first sentence of the addendum—discussed above—granting him the right to "use any and all farm equipment owned by the Landlord." In support of his position, Gregory relies on testimony of attorney Swanson that Howard, as president, wanted the corporation to retain the existing equipment so it would be available for Gregory's use.

In contrast, the corporation claims nothing in the addendum prohibits it from selling any piece of farm equipment. The corporation notes Howard's sentiments concerning the sale of the equipment as recalled by Swanson were not memorialized in the addendum. In the alternative, the corporation argues even if it cannot sell equipment that Gregory *needs* in carrying out the lease, the three disputed pieces of equipment are not essential to crop production.

In reply, Gregory asserts he uses the tractor, haybine, and uniloader to make hay, and the corporation receives one-half of the bales from his hay crop. He also notes the disputed equipment fulfills other functions contemplated by the lease, such as spreading manure and maintaining waterways and ditches.

Our resolution of this issue involves both contract interpretation and construction. *See Am. Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 329 (Iowa 1998). We interpret a contract to give a reasonable and effective meaning to all of its terms. *See Alta Vista*, 855 N.W.2d at 727.

We do not find the district court's interpretation of the addendum to be reasonable on the question of the corporation's right to sell three pieces of farm equipment used by Gregory. Gregory's right to use "any and all of the farm equipment" owned by the corporation at the time of the lease execution would be without effect if the landlord was able to sell the equipment out from under him. Further, as discussed above, the remainder of the addendum's first paragraph sets out the anticipated method for maintaining and replacing the corporation's farm equipment. Those sentences would be a nullity if the corporation could sell

any or all of the farm equipment it owned. Generally, "an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Soil Processing*, 586 N.W.2d at 334. In addition, we are not persuaded by the corporation's alternative argument that the haybine, tractor, and uniloader were not essential to the corporate farming operation governed by the lease.

We reverse the district court, concluding the contract did not grant the corporation the authority to sell the farm equipment. We remand for entry of a declaratory judgment consistent with this ruling.

### 3. Did the addendum hold Gregory responsible for repairs to corporate farm equipment?

As discussed above, the first sentence of the addendum gives Gregory the right to use all of the corporation's farm equipment. The second sentence places responsibility on him to "maintain such equipment." In response to the corporation's request, the district court entered a declaratory judgment that maintaining farm equipment includes making "repairs."

Gregory argues the court erred in not recognizing a distinction between maintenance and repairs. The corporation asserts the terms are synonymous. The corporation points to the third and fourth sentences in the paragraph, which discuss the joint responsibility of the landlord and tenant to replace broken down equipment. The corporation suggests, when read as a whole, the first paragraph obligates the tenant to make repairs until the farm equipment cannot be repaired and must be replaced. The corporation also cites the testimony of attorney Swanson, who as the drafter "thought the repairs would fit within the

maintenance issue." Tractor mechanic Dan Schulte testified there was some distinction between repairs and maintenance, but also recognized overlap between the concepts: "Maintenance would be the things the operator's manual recommends. . . . Repairs. You know if it's broken, it's broken; it has to be fixed, but there are repairs that are wear items that could or could not be replaced, depending on the individual."

Our resolution involves contract interpretation because at issue is the meaning of "maintenance." Because the district court heard extrinsic evidence concerning this issue, we review for substantial evidence. *See Fausel*, 603 N.W.2d at 618. We find substantial evidence to support the court's interpretation of "maintenance" as including repairs. In reaching its interpretation, the court was entitled to rely on the testimony of Swanson and Schulte, as well as the context of the paragraph governing the maintenance and eventual replacement of farm equipment. We affirm that Gregory "shall maintain and repair [the corporation's] machinery and equipment, but shall only be required to pay for such repairs as are necessary to keep the equipment from being broken down."[7]

### B. Crop Inputs and Marketing Grain

#### 1. Did the lease provide for the corporation to share Gregory's fuel costs for the farming operation?

On appeal, Gregory contends fuel costs should have been "split 50/50" with the corporation in the same manner as other crop inputs under the lease. The district court interpreted the lease to require Gregory to pay "all fuel costs

---

[7] The district court found the corporation had failed to prove damages on this issue. We agree.

associated with raising crops" on the corporation's farmland because fuel costs were "to be part of the expense of machinery and equipment that Gregory must furnish, necessary to carry out the terms of the lease. Fuel cost is not a crop input." The court held Gregory "responsible for all fuel costs associated with raising crops on plaintiff's farmland" and awarded damages of $7682 to the corporation.

The lease does not mention fuel costs. In the absence of a specific reference, Gregory relies on the paragraph of the farm lease entitled "Input Costs and Expenses," which provides: "The following materials, in the amounts required by good husbandry, shall be acquired by the Tenant and paid for by the parties as follows . . . ." The cost-sharing paragraph then lists ten categories in which all of the input expenses were to be paid one-half by the landlord and one-half by the tenant.[8] Gregory contends fuel costs fall under either the "harvesting expenses" category or the catchall "other" category.

Attorney Swanson testified it was possible the two categories Gregory relies upon could include fuel costs, but recalled that during the process of drafting the lease, neither Gregory nor Howard expressed the intent that fuel costs be included as an input. Gregory points to Swanson's notes from the March 2010 meeting with Howard that stated, "everything split 50/50" and contends that equal division includes the allocation of fuel costs. Gregory also cites testimony from his brother Dennis, current president of the farm corporation,

---

[8] The ten categories were (1) commercial fertilizer, (2) lime and trace minerals, (3) herbicides, (4) insecticides, (5) seed, (6) seed cleaning, (7) harvesting and/or shelling expenses, (8) grain drying expense, (9) grain storage expense, and (10) other.

that fuel is a "necessary material" to planting and harvesting crops. Finally, Gregory offers an alternative argument that the corporation waived the right to recover fuel purchases made during and before May 2011.

Seeking to uphold the district court's ruling, the corporation focuses on the language in paragraph four of the lease, specifically: "All necessary machinery and equipment, as well as labor, necessary to carry out the terms of this lease shall be furnished by and at the expense of the Tenant." The corporation acknowledges the addendum modified Gregory's obligation to furnish the farm equipment but contends the addendum did not alter his responsibility to cover the equipment-related expenses. The district court sided with the corporation.

Our resolution of this issue involves contract interpretation. We are specifically reviewing the district court's interpretation of the terms: "other" input costs and expenses, "harvesting and/or shelling expense," and "machinery and equipment . . . furnished by and at the expense of the tenant." Because the district court's interpretation depended on extrinsic evidence, we review for substantial evidence. *See Fausel*, 603 N.W.2d at 618.

We find the district court's interpretation to be reasonable in the context of the entire lease. *See Alta Vista*, 855 N.W.2d at 727 (explaining "a lease includes not only what is expressly stated by its terms but also what is necessarily implied to give effect to its express terms"). The necessary expense of operating farm equipment implies the supply of fuel to facilitate that operation. In addition, the corporation offered evidence it was standard practice for the tenant in a crop-share lease to pay for the fuel necessary to carry out the lease. Even Gregory

acknowledged it was not customary for a landlord to pay fuel costs. We find substantial evidence supports the district court's finding Gregory was solely responsible for the fuel costs.

In addition, we see no merit in Gregory's claim the corporation waived its right to reimbursement for fuel costs. Although the corporation did front the fuel costs in 2010 and 2011, Gregory reimbursed the corporation for the majority of its advancement, paying the corporation more than $16,000. The corporation's conduct did not constitute an express or implied waiver of its right to seek full reimbursement of those costs under the lease terms. *See Mosebach v. Blythe*, 282 N.W.2d 755, 760 (Iowa Ct. App. 1979) (discussing when party to contract—who is entitled to performance of a condition precedent—acts to waive that performance).

We affirm the district court's order and judgment allowing the corporation to recover $7682 in fuel costs from Gregory. We also affirm the declaratory judgment: "Fuel cost is part of the expense of machinery and equipment that [Gregory] must furnish, necessary to carry out the terms of the lease, and is not a crop input . . . ."

**2. Was the corporation responsible for the cost of hauling the grain to market because Howard consented to paying that expense with corporate funds when he was living?**

Gregory next challenges the district court's conclusion he was responsible for trucking expenses to deliver the corporation's grain to the elevator. Gregory acknowledges paragraph six of the ISBA form lease states: "Tenant, without cost to the Landlord, shall deliver Landlord's grain pursuant to request, at reasonable

times, to the elevator." But Gregory contends because the lease's subsequent blanks for inserting the place of delivery were not filled in, the provision should not be enforced. Gregory also argues his father intended for the corporation to pay the trucking bills, and the corporation waived its right to hold the tenant responsible for those costs.

The district court was "unwilling to ignore the explicit language in paragraph six of the lease agreement" quoted above and rejected the notion the parties' omission of the name of an elevator rescinded the paragraph or excused Gregory's performance. The court further reasoned:

> Gregory's testimony established that grain has been transported to the ethanol plant located between West Burlington and Middletown or Toomy's Terminal in Gulfport, Illinois. These two locations are apparently at a reasonable distance from [the corporation's] farmland. The course of performance has been to deliver grain to either of these locations. The fact that the parties neglected to insert in the blank one or both of these locations does not render paragraph six meaningless. The court concludes Gregory has breached the farm lease by not paying the cost to transport [the corporation's] grain to the elevator at the ethanol plant or Toomy's.

The court rejected Gregory's assertion of waiver and decided the corporation was entitled to a judgment for $10,158.66 in trucking expenses. In ruling on the parties' request for a declaratory judgment on this issue, the court stated:

> Because the blank of Paragraph six of Page four is not filled in, the Court will apply the parties' course of performance and require that grain be delivered, as it has in the past, to the ethanol plant between Middletown and Danville, or Toomey's terminal in Gulfport, Illinois. Gregory shall be responsible for this trucking expense.

On this issue of contract interpretation aided by extrinsic evidence, we find substantial evidence supports the court's conclusions on the lease's allocation of

the cost of transporting grain to the elevator. We affirm the damages awarded and the declaratory judgment.

### 3. Did the district court err in deciding Gregory was not obliged to pay fifty percent of the cost of crop inputs for 2010?

In its cross-appeal, the corporation argues it is entitled to reimbursement of $18,739.12—representing Gregory's fifty percent of the cost of crop inputs for the 2010 crop year. The corporation points to paragraph four of the lease that obligates the corporation and Gregory to split the cost of crop inputs "50/50." The district court decided Gregory's responsibility to split the costs of crop inputs—including the seed, fertilizer, herbicides, and insecticides—did not commence until after the execution of the lease. The corporation disputes that ruling and asserts: "There is no reason to believe the parties intended to relieve Greg of his duty to cover 50% of the crop input costs in 2010, while still allowing him to share in the harvest from 2010."

We note the court found these inputs were "ordered and paid for in 2009." The district court also found: "Gregory's evidence believably established Howard made the decision to purchase lime and chemicals prior to entering into the Lease Agreement." Gregory argues substantial evidence supports the district court's finding on this issue.

Our resolution of this issue involves both contract interpretation and construction. *See Soil Processing*, 586 N.W.2d at 329. Because the court considered extrinsic evidence while interpreting the parties' obligation to split the cost of crop inputs, we review for substantial evidence. After our review of the record, we conclude substantial evidence supports the ruling and affirm the

declaratory judgment: Gregory "is not obligated to pay for or reimburse [the corporation] for . . . (crop inputs) ordered and paid for during 2009."

### C. Livestock

**1. Did the district court properly determine Gregory was entitled to keep livestock on the corporation's property, but that the corporation had discretion to designate what land he used as pasture and what land he tilled?**

At trial, the corporation objected to Gregory using any of the leased premises for his cattle operation. The district court ruled the lease did not prohibit Gregory from keeping livestock on corporate land because, according to the document's opening sentence, "Landlord leases to tenant . . . all farmland owned or leased by" the corporation. But the court further held paragraph four of the lease allowed Gregory to use only pasture as designated by the corporation, citing the following language: "Tenant shall only be entitled to pasture or till those portions of the real estate designated by Landlord." The court read this sentence as permitting the landlord "the unrestricted right to designate what land Gregory uses as pasture and what land Gregory is entitled to till."

On appeal, Gregory agrees with the court's initial conclusion regarding his right to keep livestock but disagrees with the "unfettered discretion" granted to the corporation to restrict "which ground is pastured or tilled." In its cross-appeal, the corporation disputes the court's initial determination that the lease granted Gregory *any* right to keep livestock on corporate land but favors the court's conclusion the corporation may dictate what corporate land is available for Gregory to use as pasture and what land he may till. We will consider the parties' opposing positions in tandem.

Our resolution of this issue depends on both ascertaining the meaning of the words in the lease, as well as their legal effect. Because the district court did not consider extrinsic evidence in determining these issues, we review both interpretation and construction here as matters of law. *See Fashion Fabrics of Iowa, Inc. v. Retail Inv'r Corp.*, 266 N.W.2d 22, 25 (Iowa 1978).

We turn first to the district court's determination the lease does not bar Gregory's livestock operation on corporate land. In its ruling, the court noted the lease contains several references to livestock.[9] The corporation asserts those passing mentions do not support the court's decision because the crop-share lease does not include "obligations or promises" regarding livestock.

In its judgment for declaratory relief the district court concluded, Gregory keeping livestock on the farm was "not in direct violation of the terms of the lease." Therefore, the corporation was not entitled to damages. We concur. The corporation cannot point to terms in the contract that prohibit Gregory from keeping livestock on the land. *See Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015) (stating where the language of a contract is clear, we will not rewrite the terms for the parties). We affirm the declaratory judgment: "The lease does not prohibit [Gregory] from keeping livestock on the land being leased" from the corporation.

We turn next to the declaratory judgment stating Gregory "shall only be entitled to pasture such portion of the real estate (or till) [as] designated" by the

---

[9] For example, the lease states the tenant shall (1) "protect the landlord's trees, vines, and shrubbery from injury by the tenant's livestock" and (2) "distribute upon the poorest tillable soil manure from the farming operation." The lease also provides: "Dead livestock may be buried on the premises."

landlord. The court interpreted the sentence quoted above as bestowing a right upon the landlord to designate which portions of the corporate real estate the tenant may pasture *or* which he may till. Gregory offers an alternative reading— the landlord could retain some of the land for its own use, but once the real estate is designated for use by the tenant to *pasture or till*—the discretion lies with the tenant as to the corporate farmland's optimal use. Gregory contends the court's interpretation is at odds with the opening premise of the contract, giving him a "leasehold interest" in "[a]ll farmland owned or leased by" the corporation.[10]

Because the "pasture or till" phrase is susceptible to more than one interpretation, it is ambiguous, and we must construe its meaning. *See First Newton Nat'l Bank v. Gen. Cas. Co.,* 426 N.W.2d 618, 628 (Iowa 1988). When we view the lease in its entirety, we find Gregory's position to be a more reasonable expression of the overall purpose of the lease. It is the tenant who must prepare the real estate and plant the crops in a timely fashion, and it is the tenant who may be required by the landlord to provide a written listing of the acres of each crop planted. The tenant's role would be undermined if the landlord had free reign to decide the portions of the real estate to be used for pasture and the portions to be tilled. We conclude the reference to "portions of the real estate designated by the Landlord" in paragraph four must be read in light of the opening premise that the corporation was leasing all of its farmland to Gregory. Given that the corporation designated all of its land under the lease,

---

[10] The first page of the lease form includes a blank space for the parties to identify the number of (total) or (tillable) acres to be possessed by the tenant, but no numbers were filled in by the parties.

Gregory was "entitled to pasture or till" any number of acres that would be consistent with "good husbandry" and provide for "the best crop production that the soil and crop season permit"—as suggested in paragraph five of the lease.[11] We reverse the declaratory judgment on this issue and remand for a declaratory judgment consistent with this opinion.

### D. Attorney Fees and Costs

The lease contains the following provision governing attorney fees and court costs: "If either party files suit to enforce any of the terms of this Lease, the prevailing party shall be entitled to recover court costs and reasonable attorneys' fees." The district court entered judgment against Gregory for attorney fees in the amount of $25,000, plus expenses of $1561.95, and taxed the costs of the action against Gregory.

On appeal, Gregory argues the court erred in deciding the corporation was entitled to attorney fees as the prevailing party because the corporation prevailed on only "some" of its claims and did not win "the suit in total." He also argues the court abused its discretion in setting the amount of fees taxed to him. Both Gregory and the corporation request attorney fees for the appeal.

"When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court." Iowa Code § 625.22 (2013); *see Soults Farms, Inc. v. Schafer,* 797 N.W.2d 92, 111 (Iowa

---

[11] Paragraph five of the lease provides, in part: "Tenant shall farm the Real Estate in a manner consistent with good husbandry, seek to obtain the best crop production that the soil and crop season will permit, properly care for all growing crops in a manner consistent with good husbandry, and harvest all crops on a timely basis."

2011) (relying on section 625.22 to award appellate attorney fees). When taxing reasonable attorney fees as costs, the court may make an equitable apportionment "[w]here the party is successful as to a part of the party's demand, and fails as to part." *See* Iowa Code § 625.3.

In this case, the district court properly engaged in apportionment. But given our reversal of three claims upon which the corporation had previously prevailed, we find it necessary to remand for a revised determination on trial attorney fees, expenses, and court costs. On remand, the district court shall also set appellate attorney fees.

## IV. Conclusion

As aptly stated by the district court and illustrated by this case: "The interpretation of contracts is simply not an exact science and reasonable minds will differ in making such interpretation." Because we agree the cost of fuel is not an input cost, we affirm the judgment of the district court awarding $7682.82 in damages to the corporation. We likewise affirm the award of $10,158.66 in damages to the corporation because the lease requires Gregory to bear the cost of delivering the grain to the elevator. We affirm the district court's determination the lease requires Gregory to pay for repairs to the corporation's farm equipment. Additionally, we affirm the district court's rejection of the corporation's claims for (1) reimbursement by Gregory for crop inputs paid for in 2009, and (2) rent from Gregory for keeping his livestock on the premises.

Because we disagree with the court's conclusion Gregory is in breach of the lease when he uses corporate equipment on non-corporate land in the

context of the parties' course of dealing, we reverse the judgement requiring Gregory to pay $33,850 in damages to the corporation based on the rental value of the farm equipment. We also reverse the court's ruling (1) the corporation could sell corporate farm equipment, and (2) the corporation could designate the land Gregory uses as pasture and the land he tills.

Regarding the $25,000 in attorney fees, $1561.95 in expenses, and court costs taxed to Gregory, we remand for a redetermination by the district court in light of Gregory's partial success on appeal. On remand, the court should also address the parties' claims for appellate attorney fees.

As to the court's declaratory judgment rulings, we reverse three paragraphs—paragraph one (use of corporate machinery on non-corporate land), paragraph four (sale of corporate farm equipment), and the second part of paragraph eight (corporate designation of pasture or till). We affirm the other paragraphs and remand for entry of a declaratory judgment consistent with this opinion.

We tax costs on appeal equally to Gregory and to the corporation.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**